## BULL DOG FLOOR CLIP CO. v. MUNSON MFG. CO.

Circuit Court of Appeals, Eighth Circuit. April 5, 1927.

No. 7433.

1. **Patents ⊙➾174—Claims of patent, constituting improvement in old field, must be narrowly construed.**

Claims of patent device, which at most constitute improvement in a field which is not new, must be narrowly construed, to cover only particular device, and cannot be extended to include all devices of similar character.

2. **Patents ⊙➾328—Reissue 15,881, for metal device to hold flooring sleepers in place on concrete base, held not infringed.**

Prickett reissue, No. 15,881, covering a metal device for use in holding flooring sleepers in place on concrete base, held not infringed.

3. **Patents ⊙➾138(2)—Articles infringing reissue, but not original patent, and manufactured before reissue, may be sold thereafter.**

Articles which constitute infringement on reissue patent, but not on original, and which were manufactured nearly two years before reissue was granted, may be sold after reissue without liability therefor.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Patent infringement suit by the Bull Dog Floor Clip Company against the Munson Manufacturing Company. From a decree of dismissal, plaintiff appeals. Affirmed.

W. P. Bair, of Des Moines, Iowa (Will Freeman, of Des Moines, Iowa, on the brief), for appellant.

Ralph Orwig, of Des Moines, Iowa, for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

STONE, Circuit Judge. From a decree dismissing appellant's bill for patent infringement, this appeal is brought.

The patent involved is Prickett reissue No. 15,881, July 29, 1924, covering a metal device for use in holding flooring sleepers in place on a concrete base. The original patent was Prickett No. 1,381,740, issued June 14, 1921.

The cause was referred to a master who reported findings of fact and conclusions of law. The issues before the master were (1) anticipation; (2) construction to be given claims of the above patent; (3) existence of infringement; and (4) whether defendant had acquired intervening rights between the issues of the original patent and of the reissued patent. The conclusions of the master as to each of the above issues were as follows: (1) The reissued patent is valid as to all claims; (2) the patent is not a pioneer patent and must be given a narrow construction limited to performance of "an old function in a 'more facile, economical and efficient manner' "; (3) the device of defendant is "nearly, if not quite, as much of an improvement over Prickett's device as Prickett's device was an improvement over the prior art" and does not infringe; (4) certain devices manufactured by defendant between the issue of the original patent and the reissue would have infringed two claims of the reissued patent but did not infringe the original patent, hence no damages or profits therefor should be allowed plaintiff; also, as the machinery installed by defendant for the manufacture thereof could be utilized for manufacturing the new device put out by defendant, no allowance or relief should be allowed defendant on account of such investment; also, as defendant has entirely abandoned the above earlier device, no need for injunctive relief to protect plaintiff on that account. The master's report was approved by the court.

In the view which we take of the result which should be reached on three of the above issues (2, 3 and 4), we have found it unnecessary to determine the validity of the patent involved here. We think the master and the court were right as to those three issues and that the bill was properly dismissed.

In the construction of reinforced concrete building, the wooden flooring is attached to wooden strips, called sleepers. It is impracticable to insert these strips in the concrete separating the different stories while that concrete is being poured or laid. The method is to pour the concrete; permit it to harden; later, to place the sleepers thereon and to secure them rigidly in place. This invention relates to the method of securing the sleepers in place. Prior to Prickett, the generally used method had been to use a sleeper which was bevelled so that the base was wider and sloped on the sides to a narrower top. These bevelled sleepers were laid on the concrete floor slab and were leveled by putting wooden wedges under them. They were held in place by sand bags, props or otherwise. When the sleepers were so located, a layer of concrete was poured upon the floor slab between the sleepers until it filled these spaces nearly to the top of the sleepers. When this concrete hardened, the sleepers were firmly imbedded and ready for the flooring to be nailed thereto. The Pricket device (called clip) was a small strip of metal so cut and bent that two legs thereof could be thrust into the floor slab before it hardened, and having a horizontal base for the bottom of the sleeper and two arms projecting upward to hold the sleeper in place. These clips resulted in a considerable saving over the old method and had other advantages which made them much more desirable.

[1] While the usual method of fastening these sleepers, prior to Prickett, was as above outlined, there are clips and devices in this and related arts which would prevent the Prickett device from being a pioneer invention and entitled to the broad construction of its claims which a pioneer invention can properly urge. This prior art is shown in the following patents: Van Der Vygh No. 497,-039, January 11, 1898; Dobbin No. 752,530, February 16, 1904; Fox and Wilson No. 985,891, March 7, 1911; Killeen No 1,264,-089, April 23, 1918; and Murphy No. 1,302,-578, May 6, 1919. The Prickett clip is at most an improvement in a field which was not new when Prickett entered it. Therefore the claims of the Prickett patent must be narrowly construed to cover only the particular device and cannot be extended to include all devices of a similar character which perform the same functions.

So construing the Prickett patent, the question of infringement must be answered by a comparison of the Prickett clip and the clip made by defendant. The device is well described in claim 1 of the reissued patent as follows:

"A support for concrete and wood floor construction, comprising a single piece of material bent to form a central member, downwardly extending parts at the ends thereof for insertion into a concrete bed, the ends of the downwardly extending parts being rebent upwardly and projecting upwardly above said central members, for the purpose of receiving a sleeper between them."

This construction is accurately illustrated in Figures 1, 2 and 3 thereof as follows:

Fig. 1

Fig. 2        Fig. 3

Figure 3 shows the clip as shipped and before insertion in the floor slab. Figure 2 shows it ready for insertion or after insertion and ready to receive the sleeper on *12* and between the two upwardly projecting arms. Figure 1 shows the construction and usage with the clip and sleeper in final position.

Defendant's clip is illustrated in the record as follows:

[2]   A comparison of these two clips, so shown, will reveal that each is made of metal with members extending, as an anchor, into the floor slab and members extending above the slab for the purpose of receiving the sleeper. Each of them is a metal anchor securing the sleeper to the floor slab. But they differ in the form of construction. Prickett features the horizontal central member (*12*) which rests on the surface of the

floor slab and is, in turn, the base for the sleeper to rest upon. Defendant's clip has no such member nor any member performing a similar function. The cross member of defendant's clip is intended to rest within the body of the floor slab and functions only to connect and hold at proper distance the vertical members and to afford additional anchorage *in* the slab. Also, Prickett bends his first member down and then upward leaving the clip. Prickett used a strip. Defendant bends his upward and then downward leaving the metal ends in the floor slab. This difference in order of bending is not merely formal. It seems to be essential because of the difference in the material used to form the clip. Prickett used a strip. Defendant used a wire. The differences in order of bending are necessary to give each clip the desirable anchorage in the floor slab. Giving the Prickett patent a narrow construction in the application of equivalents, as we think we should, we think the above differences in construction are enough to escape infringement.

As to intervening rights, the facts are concisely stated by the master as follows:

"The evidence shows without dispute that after reissue of the Prickett patent, defendant sold 150,000 of the clips, Exhibit 16, which I have held to infringe claims 4 and 5 of the reissue patent, but not to infringe the original patent.

The evidence shows that all of these clips were made by defendant during the summer of 1922 and nearly two years before the reissue was granted, and were sold after the reissue of the Prickett patent.

[3] "It also shows that defendant applied to its attorney for an opinion as to the coverage of the Prickett patent and was advised that it did not cover the clip Exhibit 16. Apparently Cole was willing to rely upon the advice of his attorney and as the conclusion reached by the special master is that the clip Exhibit 16 did not infringe the original Prickett patent, it must be held that defendant had the right to dispose of the 150,000 old clips remaining on hand after the reissue without liability to plaintiff therefor.

"There is no evidence that defendant has gone to any large expense for machinery to manufacture Exhibit 16 that cannot be utilized in the manufacture of Exhibits 18 and 19, so there are no further equities to be protected."

We approve and adopt his conclusions on that matter.

The decree should be and is affirmed.