SEATTLE BOX COMPANY, INC.,
d/b/a Seattle-Tacoma Box
Company, Appellee,

v.

INDUSTRIAL CRATING AND
PACKING INC., and James
F. Rennels, Appellants.

Appeal No. 84–1559.

United States Court of Appeals,
Federal Circuit.

March 20, 1985.

Richard W. Seed, Seed & Berry, Seattle, Wash., argued for appellant.

Francis A. Utecht, Fulwider, Patton, Rieber, Lee & Utecht, Long Beach, Cal., argued for appellee. With him on the brief were Ford E. Smith, and David L. Garrison, Seattle, Wash.

Before DAVIS, Circuit Judge, NICHOLS, Senior Circuit Judge, and BALDWIN, Circuit Judge.

DAVIS, Circuit Judge.

This appeal is from a decision, on remand from this court, of the United States District Court for the Western District of Washington, which declined to accord appellants any intervening rights under 35 U.S.C. § 252 as to certain infringing products. We affirm in part and reverse in part.

## I.

### Background

We have before us a sequel to this court's decision in *Seattle Box Co. v. Industrial Crating & Packing, Inc.,* 731 F.2d 818, 221 USPQ 568 (Fed.Cir.1984). There is no need to repeat all the details of that opinion. However, for purposes of the present appeal a brief review of the most pertinent facts is appropriate.

Seattle Box Company (Seattle Box) and Industrial Crating and Packing, Inc. (Industrial) both provide oil pipe bundling services to oil companies. Seattle Box initiated the present action against Industrial on July 2, 1980, alleging the infringement of U.S. Patent No. 4,099,617 ('617) entitled "Shipping Bundle for Numerous Pipe Lengths." On August 19, 1980, Seattle Box was granted reissue of the '617 patent in U.S. Patent No. Re 30,373 (Re '373). Consequently, on October 10, 1980, Seattle Box amended its complaint, alleging infringement of the Re '373 patent.

Briefly, the patented invention defines a system of stacking ("bundling") tiers of pipes across parallel horizontal beams or sleepers. To ensure that adjacent pipes remain separated, double-concave wooden

spacer blocks are used. Figure 4 below, illustrating one such tier, depicts the pipes 18 which lie across wooden sleepers 10, 30, and the spacers 22 which separate the pipes. (Stacking these tiers results in a pipe "bundle.") The weight of the overhead load (a product of the upper tiers of pipe which are not shown) is absorbed by the spacer blocks 22. Claim 1 of the '617 patent required that a spacer block have a height "greater than the diameter of the pipe." However, in the Re '373 patent, claim 1 was amended to specify a spacer block "of a height *substantially equal to or* greater than the thickness of the tier of pipe length." (Emphasis in the claim.)

Figure 4

On the issues of validity and infringement, the district court held in favor of Seattle Box, and after an accounting for lost profits, entered judgment on February 9, 1983. *Seattle Box Co. v. Industrial Crating and Packing, Inc.*, 217 USPQ 343 (W.D.Wash. May 4, 1982). Industrial appealed to this court, arguing invalidity and non-infringement. Speaking for this court, Judge Nichols stated that the district court

correctly held that the Re '373 patent was not invalid under either 35 U.S.C. § 103 or § 112. But the district court's finding of liability for pipe bundling activities Industrial performed *before* the Re '373 patent issued was reversed because under the first paragraph of 35 U.S.C. § 252[1] the reissue claims were not "identical" to the original claims, and therefore infringement could only be asserted for the Re '373 patent and not the '617 patent. Further, we vacated the district court's award of damages for 84 post-reissue bundles made from spacer blocks ¼ inch less than the diameter of the separated pipes, and remanded for a determination of literal infringement of the Re '373 patent which we found limited to those spacer blocks having a height "substantially equal" to the pipe diameter. Lastly, we vacated the district court's award of post-reissue damages for infringement of the Re '373 patent, holding that the defense of intervening rights under the second paragraph of 35 U.S.C. § 252 was properly raised. Since the district court had not made any findings under § 252, we remanded the case for the district court's consideration of "whether to use its broad equity powers to fashion an appropriate remedy." We declared that such a remedy is discretionary, and suggested a range of options available to the district court.

1. The full text of 35 U.S.C. § 252, entitled "Effect of Reissue," reads:

The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims or the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by

the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

On June 12, 1984, the district court held a hearing on the matters remanded from this court. As to the 84 bundles made with spacer blocks ¼ inch less than the pipe diameter, the district court held that these bundles did not infringe the Re '373 patent.[2] Supporting its assertion that the doctrine of intervening rights applies to the post-reissue bundles (there are 919 bundles in issue), Industrial presented the affidavit testimony of Vernon Zier, Industrial's in-house accountant, who summarized Industrial's business records. Zier averred that on August 19, 1980 (the date of the Re '373 patent), there were orders for 114 bundles which were subsequently completed after that date. In addition, Industrial's inventory of spacer blocks on August 19, 1980 was sufficient to make 224 bundles (this figure incorporates the orders for the 114 bundles). Seattle Box has not contested these facts.

After considering Industrial's argument that intervening rights under 35 U.S.C. § 252 should preclude an award of damages for 224 of the 919 post-reissue bundles, the district court merely stated in its final order on July 19, 1982 that:

> [The 224 bundles] were made after the grant of plaintiff's reissue patent. Defendant has failed to persuade the court that good and valid reasons exist for the court to exercise its discretionary powers in favor of the Defendant as to intervening rights. The Court therefore declines to exercise its discretion in according any intervening rights as to [the 224] bundles.

It is from this order and the ensuing judgment that Industrial appeals.

In the current appeal, Industrial asserts that, contrary to this court's instructions, on remand the district court abused its discretion by not making any findings relating to intervening rights with regard to the pre-reissue spacer block inventory. Industrial also asserts that the district court abused its discretion in awarding damages according to Seattle Box's lost profits, as opposed to awarding damages calculated on the basis of a reasonable royalty rate.

## II.

### The District Court's Action on Remand

■ A remand from this court to a district court which incorrectly applied the law at the outset should not be casually swept aside in a conclusory fashion. This court in its prior opinion went to considerable length to set out why the lower court erred. We pointed out that the patent claims appearing in Seattle Box's reissued patent are substantively different from those in its original patent, and therefore the doctrine of intervening rights was properly raised. The opinion suggested options available to the district court:

> (1) confine Industrial to the use of those double-concave blocks already in existence,
>
> (2) permit Industrial to continue in business under conditions which limit the amount, type or geographical location of its activities, or
>
> (3) permit Industrial to continue in business unconditionally.

731 F.2d at 830, 221 USPQ at 977. Thus, our opinion plainly envisaged a reasoned discussion of the whole matter. We hold (for the reasons expressed below) that the cursory ruling by the district court disregards our prior opinion, and constitutes an abuse of discretion.

When a district court applies a statute erroneously and thus fails to make findings of fact under Federal Rule of Civil Procedure 52(a), or fails properly to provide an indication of the grounds for its exercise of discretion, an appellate court will normally remand for further proceedings in order to permit the district court to make the missing findings. *See Pullman-Standard, Inc. v. Swint,* 456 U.S. 273, 291, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982). In response to the lower court's erroneous view on intervening rights, this is exactly what we did in our prior opinion. And the remand result, set forth in full *supra,* is clearly insuffi-

---

**2.** There is no appeal from this finding.

cient. The failure of a trial court to comply with Rule 52(a) has been characterized as a "dereliction of duty." *See* 5A *Moore's Federal Practice,* ¶ 52.06[2] (2d ed. 1984). In particular, it was error for the court to limit its statement on the equitable components of intervening rights to a mere ultimate conclusion, without any explanation whatever of the particular factors and facts it considered. *See Lee v. Lee,* 537 F.2d 762, 765 (3rd Cir.1976); *Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery,* 454 F.2d 442, 453 (9th Cir.1972), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974); *Bateman v. Ford Motor Co.,* 310 F.2d 805, 806 (3rd Cir.1962).

Appellee argues that, despite the bare conclusion we have quoted, the district court made sufficient findings. As a prime example of such a finding, appellee notes that the district court, in support of its refusal to exercise discretion on remand, initially stated in its order that "... *it has been shown that the materials cannot be used in a non-infringing way.*" (Emphasis in appellee's brief.)[3] But then, almost parenthetically, in the following paragraph of its brief, appellee notes that this citation was part of a previous order (June 28, 1984) which was revised on reconsideration because of a "minor arithmetic error." The fact is that the cited sentence was *deleted* from and does not appear in the final July 19, 1984 order. Seattle Box then boldly asserts that the district court "*affirmatively* and *expressly* found that no *substantial* preparations had been made before reissue." (Emphasis in appellee's brief.) As we have said, this finding was deliberately omitted on reconsideration, obviously as a result of Industrial's specific request to that effect.

To cite a superseded order of a district court and then argue that the lower court "expressly" found a now deleted "fact" appearing in that order is plainly not proper practice. This court does not encourage that practice. *See˙ e.g., Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 221

USPQ 649 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984).

Disregarding the deleted finding, as we must, the simple gist of the action on remand is that the district court failed to make any findings, evaluate those facts which were previously established, or indicate the grounds for its exercise of discretion. Reviewing such a bald conclusion obviously puts this court at a disadvantage. A second remand "is the proper course *unless the record permits only one resolution of the factual issue.*" *Pullman-Standard,* 456 U.S. at 292, 102 S.Ct. at 1792 (emphasis added). As this court has previously said, the "normal practice" of remanding a case to the trial court for reconsideration

> "is not inflexible and may be departed from in appropriate circumstances, particularly where, as here, the record leaves no question as to the decision that must result from a remand." *Baginsky v. United States,* 697 F.2d 1070, 1074 (Fed.Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 423, 78 L.Ed.2d 358 (1983).

That standard for an appellate determination is fulfilled in the present case: (1) a second remand would merely be a renewed remand with similar instructions, (2) there is a sufficient record, (3) the relevant facts are not in dispute, (4) no credibility determinations are needed, and (5) we think there can be only one acceptable resolution of the problem. A second remand is therefore unnecessary. *See* also *ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1578, 221 USPQ 929, 933 (Fed.Cir. 1984); *Jones v. Hardy,* 727 F.2d 1524, 220 USPQ 1021 (Fed.Cir.1984); and *Ferrero v. U.S.,* 603 F.2d 510 (5th Cir.1979). Accordingly, we shall resolve the intervening rights issue on the facts clearly established in this record.

## III.

### *Intervening Rights*

The doctrine of intervening rights finds its roots in the second paragraph of

---

**3.** ˙ The substantive impact of such a finding will become evident, *see, infra,* Part III.

35 U.S.C. § 252:[4]

(1) No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. (2) The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which *substantial preparation was made before the grant of the reissue*, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which *substantial preparation was made, prior to the grant of the reissue*, to the extent and under such terms as the court deems equitable for the *protection of investments made or business commenced before the grant of the reissue.*

This section provides that when certain conditions are present a reissue shall not abridge or affect certain rights of those who acted before the reissue was granted. *See* Federico, *Commentary on the New Patent Act*, 35 U.S.C.A. 1, 46 (1954). Because of such pre-reissue activity, an infringer might enjoy a "personal intervening right" to continue what would other-wise be infringing activity after reissue. *See* 3 Chisum, *Patents*, § 15.02[6] (1984). The underlying rationale for intervening rights is that the public has the right to use what is not specifically claimed in the original patent. *Sontag Chain Stores Co. v. National Nut Co.*, 310 U.S. 281, 290, 60 S.Ct. 961, 965, 84 L.Ed. 1204 (1940). Recapture through a reissue patent of what is dedicated to the public by omission in the original patent is permissible under specific conditions, but not at the expense of innocent parties. *Id.* at 293, 60 S.Ct. at 967 (the defendant, who had built and begun to operate its machines in a form not covered by the original patent, was allowed to continue the post-reissue activity which infringed the reissue patent). Therefore, one may be able to continue to infringe a reissue patent if the court decides that equity dictates such a result.[5]

 As we said in our first opinion, once the doctrine of intervening rights is properly raised, the court must consider whether to use its broad equity powers to fashion an appropriate remedy.[6] We also held that the second sentence of the second paragraph in 35 U.S.C. § 252 was to be applied in this case in accordance with equity. Accordingly, the district court should have considered the relevant facts as applied to the portion of the statute which questions whether "substantial preparation was made [by the infringer] before the grant of the reissue." Specifically, the district court's inquiry should have been—and it is now our burden to decide—whether

---

**4.** For the full text, *see* note 1, *supra*. In the reproduction of the second paragraph at this point, we have numbered the sentences and emphasized some portions.

**5.** Industrial, as it states in the section of its brief entitled "Relief Sought by Industrial Before the District Court," neither sought a continued right to bundle pipe in a manner infringing the reissue patent, nor contended that it should not pay compensation for any of its post-reissue bundling activities. Instead, it urged only that damages should not be awarded for the 224 bundles made from pre-reissue inventory. We limit our inquiry to whether damages may be avoided for these 224 and make no determination as to whether the doctrine of intervening rights would have precluded damages for the remaining 695 bundles (919 less 224) had Industrial set forth adequate equitable factors supporting an application of intervening rights as to *all* post-reissue activities.

**6.** In the first *Seattle Box* opinion we set forth a single straightforward test, derived from § 252, for determining when the doctrine of intervening rights might protect an alleged infringer: whether the claims of the original patent repeated in the reissue patent are infringed. Because no claim from the original patent was repeated in the reissue patent, we held that the defense of intervening rights was properly raised. 731 F.2d at 830, 221 USPQ at 576.

the post-reissue use of the 224 bundles which were made from pre-reissue spacer blocks constituted "substantial preparation" to merit the protection afforded by intervening rights, so as to protect "investments made ... before the grant of reissue." We stress that all those spacer blocks were on hand when the reissue patent issued.

Two sets of the district court's factual findings weigh heavily in the present equitable determination of the application of intervening rights. First, in the district court's initial findings in its first decision, it was established that, prior to the Re '373 patent, Industrial and its patent attorney were fully aware of the '617 patent. Second, the district court found that Industrial continued manufacturing after reissue on the advice of its patent counsel. *Seattle Box Co.*, 217 USPQ at 349–350. This advice-of-counsel was given to Industrial in April 1980, while the '617 patent was still extant, some 3 months before the Re '373 patent issued (August 17, 1980), and over two months before Industrial's patent counsel was even informed by Seattle Box's patent counsel (July 9, 1980) of the reissue patent claims which had been allowed by the examiner. This pre-reissue advice, followed by Industrial, was to hold the concave block height to about ⅟₁₆ of an inch shorter than the pipe diameter. *See* 217 USPQ at 349 (W.D.Wash.); and 731 F.2d at 828–29, 221 USPQ at 576 (Fed.Cir.). From these facts, it is apparent that Industrial was attempting to design its spacer blocks (including those it held on the date of the reissue patent) "around" the original '617 patent claims which called for a spacer block with a height *"greater* than the diameter of the pipe" (emphasis added). It turned out that these blocks infringed the reissue patent (Re '373), but they plainly did *not* literally infringe the original '617 patent (and probably did not infringe that patent under the doctrine of equivalents).

To enable Seattle Box now to recapture (in the form of damages for post-reissue use of the 224 bundles made from pre-reissue spacer blocks) matter which Seattle Box had already dedicated to the public in the original patent, at the expense of Industrial which knew of the precise claims of that '617 patent, could open the door to a "gross injustice." *Sontag Stores Co.*, 310 U.S. at 293–94, 60 S.Ct. at 966–67; *see also Gerhardt v. Kinnaird,* 162 F.Supp. 858, 117 USPQ 474 (E.D.Ky.1958) (pre-reissue advice of counsel in building a non-infringing item was one of the equitable factors supporting an application of intervening rights). In these circumstances, the new reissue claims in this case present a compelling case for the application of the doctrine of intervening rights because a person should be able to make business decisions secure in the knowledge that those actions which fall outside the original patent claims are protected. 4 Pat.L.Persp. § 10.8 (2d ed. 1983). Here, the spacer blocks involved were made or acquired, before the reissue, so as not to infringe the then existing '617 patent.

Another fact which weighs heavily is that at the time of reissue Industrial had existing orders for 114 bundles. As we have noted, the remedy of intervening rights is calculated to protect an infringer's preexisting investments and business. Prior business commitments, such as previously placed orders and contracts, are one such example. Silverman, *To Err is Human—Patent Reissues and the Doctrine of Intervening Rights,* 48 J.P.O.S. 696 (1966).

Another important factor courts have considered is whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product. *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.,* 607 F.2d 885, 203 USPQ 27 (10th Cir.1979) (Miller, J., sitting by designation), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). The cost and ease of converting infringing items to non-infringing items is an important equitable consideration because the "infringer" can then avoid a total loss of his good faith investment. In this case, the district court did not make any finding of the cost of conversion or of possible non-infringing uses. Instead, as

previously discussed, a finding was made in its initial order as to non-infringing uses, but then it was retracted. In addition, Industrial has not asked for the continued use (without liability) of goods on hand at the time of ultimate judgment, as did the infringer in the *Plastic Container* case.[7] In fact, the part of the inventory at issue here had already been fully used before the district court issued its first opinion on May 4, 1982 passing on the issues of validity and infringement.[8]

After weighing the facts and factors, we conclude that Industrial should clearly have been allowed to dispose of old inventory remaining on hand at the time of reissue, without liability to Seattle Box. *Accord Bull Dog Floor Clip Co. v. Munson Mfg. Co.*, 19 F.2d 43 (8th Cir.1927) (product which infringed the reissue but not the original patent was made before the reissue on the advice of counsel and then sold after the reissue). The district court's conclusion to the contrary was an abuse of discretion.[9] We therefore reverse the determination that intervening rights do not protect Industrial from owing damages as to the 224 bundles.

## IV.

### Lost Profits

■ Industrial argues that the proper measure of damages for the remainder of the 919 post-reissue bundles should have been computed on a reasonable royalty basis, not a lost profits basis, in view of the "substance, intent, and spirit" of 35 U.S.C. § 252. We review a district court's choice of a method in awarding damages on an abuse of discretion basis. *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 223 USPQ 591 (Fed.Cir. 1984). *See also Hanson v. Alpine Valley*

*Ski Area, Inc.*, 718 F.2d 1075, 1078, 219 USPQ 679, 681–82 (Fed.Cir.1983). Abuse of discretion may be established by showing that the district court either made an error of law, or a clear error of judgment, or made findings which were clearly erroneous.

The district court may choose at its discretion the methodology with which to assess and compute damages. The only limitation upon the court is that the award must be "adequate to compensate for the infringement," and cannot be "less than a reasonable royalty." 35 U.S.C. § 284. "Simply because different accounting methods lead to different results does not make an award at the higher end of the spectrum 'more than adequate'." *Paper Converting*, 745 F.2d at 21, 223 USPQ at 598. It is Industrial's burden to convince us that the amount or method of assessing damages constituted an abuse of discretion by the district court.

■ To support an award based on lost profits, the patent owner usually presents evidence of (1) the demand for the patented product, (2) the absence of acceptable non-infringing substitutes, (3) his own production and market capacity to meet the demand, and (4) the computation of his lost profits. *Paper Converting*, 745 F.2d at 21, 223 USPQ at 598. Industrial has failed to establish or even allege that the district court made any error of law or was clearly erroneous regarding any of these elements. Accordingly, we cannot say that the district court's award of damages based on lost profits constituted an abuse of discretion.

## V.

### Conclusion

We reverse the district court's holding that intervening rights does not preclude

---

**7.** It is interesting to note that the court in *Plastic Container* found that, although there were non-infringing uses, equity required that the defendant was entitled to recoup its investment of conversion by offsetting any infringement damages.

**8.** The uncontradicted affidavit of Industrial's accountant, Zier, stated that all 919 post-reissue bundles (including, of course, the 224 bundles

made from pre-reissue inventory) were made between August 19, 1980 (the date of the reissue patent) and January 19, 1982.

**9.** The previous *Seattle Box* opinion listed as an option that the court "confine Industrial to the use of those double-concave blocks already in existence." (*See* Part II, *supra*.) This option afforded the narrowest relief to Industrial.

damages as to the 224 bundles made from pre-reissue spacer blocks, and hold that the doctrine of intervening rights does bar such damages. We affirm the award based on lost profits as to the remaining 695 bundles.

Each party to bear its own costs.

*Affirmed in Part, Reversed in Part.*

NICHOLS, Senior Circuit Judge, concurring and dissenting.

I agree with and join in Part IV of the court's opinion, captioned *Lost Profits*. I do not agree with Parts II and III, *The District Court's Action on Remand*, and *Intervening Rights*, and I dissent from those parts.

With respect to the alleged defective procedure below, I am satisfied that by use of three words from 5A *Moore's Federal Practice*, ¶ 52.06[2] (2d ed. 1984) alluding to "dereliction of duty" the panel's intent is only to impute legal error to that court, not reprehensible misconduct. The entire sentence from which the three words are quoted reads—

> The failure of the trial court to comply with Rule 52, while characterized as a dereliction of duty, does not demand a reversal "if a full understanding of the question presented may be had without the aid of separate findings." [Footnote omitted.]

The use of such "fighting words" by the learned author therefore does not even imply. that the omission of Rule 52 fact finding, when on paper required, is necessarily even reversible error. The panel here obviously has no difficulty, in its own view, in understanding the question presented, since it proceeds to decide it, though erroneously.

The obligation to make such findings under Rule 52(a) springs into being after an action tried on the facts without a jury, or the grant or refusal of an interlocutory injunction. None of those had occurred after remand. The judge did make elaborate findings after the original trial. For example, he found that Industrial knew of the existence of the reissue patent and of

the original, that Industrial copied Seattle-Tacoma's patented pipe bundle, and that Industrial acted upon advice of counsel. The court also found that Industrial contended it had intervening rights, but had failed to establish *any* facts which would entitle it to intervening rights. He could very well not recognize that anything had happened to require him to make more findings. If our panel really misses anything that would be helpful, it is not more facts, but an opinion or memo on the requirements of the law of equity applicable to this case. As the only new evidence was Mr. Zier's affidavit, which is undenied, we can read that as readily as we could the court's findings had it made any. Where the facts are clear and undisputed, the absence of findings may not be fatal. *See generally, Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir.1965). Conclusions of law are not subject to Rule 52(a). *Moore's Federal Practice*, ¶ 52.03[2].

Unlike my brethren I, as author, did not recognize or perceive anything in our original opinion to demand detailed findings in the event, which occurred, that the judge saw no reason to reduce damages for infringement of the reissue patent on account of intervening rights, the question being, of course, subsumed as to the original patent. No doubt the author of words for a panel is the last one capable of interpreting them objectively. Reading the words in the judge's order of July 19, 1984, I thought them sufficient, if only barely so, to show that he had, as we asked, considered the facts as divulged in new evidence which he reopened his record to receive. He elicited only the Zier affidavit. He concluded that Industrial had pointed to no equities worth further discussion. It is very debatable whether the judge, after remand, was under any duty to find any more facts but, if he was, his breach of duty was formal only.

Actually, putting this in context, the only new equitable considerations placed before him were that Industrial had on hand on the reissue date orders for 114 bundles and inventory sufficient to make 224 bundles,

with a total investment of $30,539.36. As a source of § 252 equitable considerations, however, nothing in the inventory but the peculiar concave blocks were so processed as to be dedicated to this infringing use alone. They were worth 60 cents each, and being 12,100 in number, all were worth $7,260. They have a powerful leverage indeed as they reduce the liability by approximately $43,000, for the panel clears Industrial of infringement of all 224 bundles because of them.

As Industrial went right on infringing after filling 114 orders and using up the 12,100 blocks, and other items in its inventory on the reissue date, necessarily purchasing more as needed, it is apparent it never intended to exercise equitable intervening rights as such. It does not come into equity with clean hands. Its attitude was one of complete contempt for both the original patent and the reissue. In these circumstances, I do not think the district judge abused his discretion in not making any adjustment for the unfilled orders or the blocks or other inventory items. If he had done so, it would have been, I think, also within his discretion, but if he had given Industrial, as the panel does, a free pass for as many as 224 infringements, I would have thought that an abuse of his discretion. Our suggested possible options in the first opinion respecting application of § 252 were predicated, at least in this author's mind, on Industrial's making a far more impressive show of its equities than it did in fact make. The statute, too, seems to me to visualize equities more impressive than unfilled orders and the mere existence in Industrial's inventory of so many 60 cent blocks, bought in face of the plainest warnings. It seems to contemplate plants built, and matters of that sort.

The statute is so worded that the most obvious equitable adjustment is very likely unauthorized. That would be to credit the infringer with the cost, $7,260, of the blocks in inventory on the reissue date. Assuming, as the panel does, that relief for "intervening rights" must be at a minimum a free license to infringe for some duration, the most equitable duration would be that required to fill the orders for 114 bundles. There would be difficulties in that the customers, who placed the orders, certainly were not asked to excuse Industrial from delivery. If they were asked, persuasion should not have been difficult to obtain since by accepting and using the 114 bundles, they apparently became infringers themselves, a status they might have wished to avoid. I cannot call refusal to make this adjustment an abuse of discretion any more than a decision to make it would be. It is a matter for the district judge to decide, which he has decided.