# United States Court of Appeals
# for the Federal Circuit

---

**JOHN BEAN TECHNOLOGIES CORPORATION,**
*Plaintiff-Appellant*

**v.**

**MORRIS & ASSOCIATES, INC.,**
*Defendant-Cross-Appellant*

---

2020-1090, 2020-1148

---

Appeals from the United States District Court for the Eastern District of Arkansas in No. 4:14-cv-00368-BRW, Senior Judge Billy Roy Wilson.

---

Decided: February 19, 2021

---

GARY D. MARTS, JR., Wright, Lindsey & Jennings LLP, Little Rock, AR, argued for plaintiff-appellant. Also represented by RICHARD BLAKELY GLASGOW.

NORMAN ANDREW CRAIN, Thomas Horstemeyer LLP, Atlanta, GA, argued for defendant-cross-appellant. Also represented by DAN GRESHAM.

---

Before LOURIE, REYNA, and WALLACH, *Circuit Judges*.

REYNA, *Circuit Judge*.

This appeal is from a decision of the United States District Court for the Eastern District of Arkansas that, on remand from this court, granted-in-part Morris & Associates, Inc.'s motion for summary judgment as to equitable intervening rights, denied-in-part its motion as to prosecution laches, and dismissed the case. John Bean appeals the district court decision as to equitable intervening rights and Morris cross-appeals the decision as to prosecution laches. For the following reasons, we affirm the district court's decision.

## BACKGROUND

U.S. Patent No. 6,397,622 ("the '622 patent") was issued on June 4, 2002, to John Bean Technologies Corporation ("John Bean"). The '622 patent covers an auger-type poultry chiller used to help process poultry for human consumption.[1] John Bean's only domestic competition in the poultry chiller market is Morris & Associates, Inc. ("Morris"). *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, No. 4:14-CV-00368, 2019 WL 7176779, at *3 (E.D. Ark. Sept. 23, 2019) ("*Decision*").

On June 27, 2002, Morris wrote a demand letter to John Bean explaining its belief that the '622 patent was invalid and citing prior art to support its position. J.A. 263–66. Morris received no response from John Bean and proceeded to develop and sell chillers that included features described in the '622 patent. J.A. 5.

On December 18, 2013, approximately eleven years after receiving the demand letter, John Bean filed a request for ex parte reexamination of the '622 patent before the

---

[1]    This court has previously issued a decision in *John Bean Tech. Corp. v. Morris & Associates, Inc.*, 887 F.3d 1322 (Fed. Cir. 2018) ("*John Bean I*"). We do not reiterate all the details from that opinion and limit our review to the facts pertinent to this appeal.

United States Patent and Trademark Office ("USPTO"). J.A. 2. After John Bean amended claims 1 and 2 of the original '622 patent and added six additional claims, the USPTO issued a reexamination certificate on May 9, 2014. J.A. 3.

On June 19, 2014, six weeks after receiving the reexamination certificate, John Bean filed a complaint in the United States District Court for the Eastern District of Arkansas, alleging that Morris infringed the '622 patent once the reexamination certificate issued. John Bean later amended the complaint to include willful infringement.

Morris moved for summary judgment, and on December 14, 2016, the district court granted Morris's motion for summary judgment with respect to the affirmative defenses of laches and equitable estoppel. J.A. 23. John Bean appealed, and this court reversed the grant of summary judgment and remanded to the district court. *See generally John Bean I*, 887 F.3d 1332.

On remand, Morris filed another motion for summary judgment asserting that John Bean's patent infringement claims were barred by equitable intervening rights and prosecution laches. The district court denied Morris's motion for summary judgment with respect to prosecution laches, reasoning that the laches doctrine applies to conduct of a patent applicant before the patent's issuance, but not to conduct of a patent owner after the patent's issuance. *Decision*, 2019 WL 7176779, at *4 & n.26 (citing *Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1154 (N.D. Cal. 2003)). We affirm the district court's decision to grant-in-part Morris's motion for summary judgment for equitable intervening rights, and we therefore do not reach the district court's decision to deny-in-part the same motion for prosecution laches.

When a defendant is accused of infringing a reissued patent, she may raise the affirmative defense of equitable intervening rights. *See* 35 U.S.C. § 252. Under § 252, an

alleged infringer may be protected from liability for infringement of substantively and substantially altered claims in a reissued patent. 35 U.S.C. § 252. The affirmative defense also applies to reexamined patents. *See* 35 U.S.C. § 307(b); *see also Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012) (en banc) ("[A]fter a patent emerges from reexamination, [§ 307(b)] makes available absolute and equitable intervening rights . . . with respect to 'amended or new' claims in the reexamined patent.").

Granting equitable intervening rights is a matter of judicial discretion. Once granted, they give the alleged infringer the continued right to manufacture, sell, or use the accused product after the reexamination certificate is issued "when the defendant made, purchased, or used identical products, or made substantial preparations to make, use, or sell identical products, before the reissue date." *See BIC Leisure Prods., Inc. v. Windsurfing Inter., Inc.*, 1 F.3d 1214, 1221 (Fed. Cir. 1993). Section 252 provides, in relevant part, the following:

> The court . . . may provide for the continued manufacture, use, offer for sale, or sale of the thing made . . . of which substantial preparation was made before the grant of the reissue . . . to the extent and under such terms as the court deems *equitable for the protection of investments made or business commenced before the grant of the reissue.*

35 U.S.C. § 252 (emphasis added). Under this section, an infringer may continue what would otherwise be infringing activity after a reissue or reexamination. *See Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 756 F.2d 1574, 1579 (Fed. Cir. 1985) ("*Seattle Box II*"). The rationale underlying equitable intervening rights "is that the public has the right to use what is not specifically claimed in the original patent." *Id.* (citing *Sontag Chain Stores Co. v. Nat'l Nut Co.*, 310 U.S. 281, 290 (1940)). Thus, an infringer may

continue to infringe after reissue or reexamination "if the court decides that equity dictates such a result." *Id.*

The district court granted Morris's motion for equitable intervening rights after weighing six factors including:

(1) whether substantial preparation was made by the infringer before the reissue;

(2) whether the infringer continued manufacturing before reissue on advice of its patent counsel;

(3) whether there were existing orders or contracts;

(4) whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product and the cost of conversion;

(5) whether there is a long period of sales and operations before the patent reissued from which no damages can be assessed; and

(6) whether the infringer made profits sufficient to recoup its investment.

*Decision*, 2019 WL 7176779, at *2 (citing *Visto Corp. v. Sprogit Techs., Inc.*, 413 F. Supp. 2d 1073, 1090 (N.D. Cal. 2006), and *Seattle Box II*, 756 F.2d at 1579).

The district court found that Morris made "substantial preparation" before the USPTO issued the reexamination certificate based on Morris's "years of research, developments, investments, improvement, promotion, and goodwill associated with the accused product" and Morris's conversion of "nearly [two-thirds] of its business to selling the accused product." *Id.* at *2. The district court found that while Morris had made profits sufficient to recoup its investment due to a long period of sales, requiring "a company to eliminate [two-thirds] of its business because a patent holder, after, a decade, decided to seek reexamination and enforce the patent is inequitable." *Id.* at *3. The district court also considered the relative degrees of good or

bad faith exercised by the parties and found that John Bean appeared to have acted in bad faith when it did not dispute Morris's belief that the '622 patent was invalid and thus allowed Morris to build its business based on the accused product before requesting reexamination. *Id.* The district court weighed the remaining factors, all of which favored Morris. *Id.* at \*4. Upon balancing the equities, the district court concluded that Morris was entitled to equitable intervening rights and granted Morris's motion for summary judgment on equitable intervening rights. *Id.*

John Bean appeals. We have jurisdiction under 28 U.S.C. § 1295(a).

## DISCUSSION

On appeal, John Bean argues that the district court erred by granting Morris's motion for summary judgment on equitable intervening rights because the court abused its discretion by improperly weighing several equitable intervening rights factors. In particular, John Bean argues that the district court did not give sufficient weight to the fact that Morris had already recouped its investment and refused to quantify its profits, though John Bean admits it could estimate Morris's profits from its discovery responses. *See* Appellant's Br. 8. John Bean also argues that the district court erred by granting Morris summary judgment in light of outstanding genuine issues of material fact concerning Morris's willful infringement, which would make Morris a bad actor to whom equitable defenses are unavailable.

We review a district court's grant of summary judgment based on the law of the regional circuit, here the Eighth Circuit. *See, e.g.*, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340 (Fed. Cir. 2013). The Eighth Circuit reviews a district court's grant of summary judgment de novo, construing evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. *See Schoelch v.*

*Mitchell*, 625 F.3d 1041, 1045 (8th Cir. 2010). Summary judgment is proper if there are no genuine issues of material fact. *See Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, 953 F.3d 541, 545 (8th Cir. 2020). With respect to the district court's application of equitable intervening rights, this court reviews the district court's decision under an abuse of discretion standard. *See Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1358 (Fed. Cir. 2001).

We turn to the question of whether the district court abused its discretion in its application of the equitable intervening rights doctrine. This court has previously determined that "once the doctrine of intervening rights is properly raised, the court must consider whether to use its broad equity powers to fashion an appropriate remedy." *Seattle Box II*, 756 F.2d at 1579. This court also held that "the second sentence of the second paragraph in 35 U.S.C. § 252 was to be applied in that case in accordance with equity."[2] *Id.*

In cases involving equitable remedies and equitable defenses, the discretion of the court permits "decisions that are flexible, intuitive, and tailored to the particular case."[3]

---

[2]    "The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue . . . to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue." 35 U.S.C. § 252.

[3]    *See also* Michelle S. Marks, *How Will the "Equitable Remuneration" Payment Within the New Patent Term Be Interpreted?*, 5 Fed. Cir. B.J. 261, 281 (1995) (citing Dan B. Dobbs, *Law of Remedies* § 2.4(1), at 92 (2d ed. 1993)).

*See e.g.*, *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 895 (Fed. Cir. 1998), *Monsanto Co. v. E.I. Du Pont de Nemours & Co.*, 784 F.3d 1189, 1197 (Fed. Cir. 2014). It permits a "judge's discretion to see justice done in individual cases, by remedying the imperfect fit between the rules of law and the facts of the world."[4]

John Bean argues that this court should deem monetary recoupment of investments made prior to the grant of reissue as sufficient to protect investments and defeat the grant of the equitable remedy. We disagree.

John Bean relies on *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885 (10th Cir. 1979) in support of its position that investments only need to be protected up to the point of recoupment. *See, e.g.*, Oral Arg. at 1:56–2:32, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1090_10062020.mp3. In *Plastic Container*, the court held that the defendant-appellee had not acquired intervening rights permitting it to continue the manufacture of the infringing goods without authorization. Still, the court concluded that equity required that the defendant-appellee be permitted to "recoup its investment and to offset, against any infringement damages, the reasonable cost of converting or replacing its present equipment in order to produce noninfringing goods." *Plastic Container*, 607 F.2d at 903. Notably, the plaintiff did not delay on commencing legal proceedings. *Id.* at 889; 889 n.3. In this case, John Bean waited more than a decade. In addition, the court correctly noted that "[u]nder 35 U.S.C. [§] 252, . . . the court may provide, to the extent it deems equitable, for either the conditional or unconditional continuation of the making, using, and selling of the infringing goods or process." *Id.* at 901 n.35.

---

[4]    *Marks, supra* note 3, at 280.

This court has not yet had the opportunity to examine the boundaries of the phrase "protection of investments" in § 252. The statute's text does not specify when the protection begins and ends or precisely which types of investments are entitled to protection.

But recoupment is not the sole objective of § 252's protection of "investments made or business commenced" before the claims' alteration. *See also* 35 U.S.C. § 252; Oral Arg. at 1:19–55. We see no indication in the statute that monetary investments made and recouped before reissue are the *only* investments that a court may deem sufficient to protect as an equitable remedy. To be clear, recoupment is a factor that a court may consider, as it did in this case, in weighing the equities before making a determination on entitlement to equitable intervening rights. But it is not the sole factor a district court must consider, nor is it a factor that must be weighed more heavily, when the court balances the equities. Determining entitlement to equitable intervening rights is an analysis broader than simply determining whether a party claiming intervening rights has fully recouped its monetary investment.[5]

Here, the district court considered seven different factors in making its determination and decided the facts sufficiently demonstrated that Morris was entitled to an affirmative defense of equitable intervening rights. The court found that John Bean had engaged in bad faith and that Morris's investment was more than just a financial

---

[5]    *See, e.g.*, *Seattle Box II*, 756 F.2d at 1579–80 (considering whether "substantial preparation was made [by the infringer,]" "pre-reissue advice of counsel [was given] in building a non-infringing item," and "non-infringing goods can be manufactured from the inventory used to manufacture the infringing product"); *Shockley*, 248 F.3d at 1361 (determining that an infringer's "unclean hands" supported the denial of equitable intervening rights).

investment. Given our standard of review in this appeal and the broad equity powers a trial court has to fashion an appropriate remedy, we do not conclude that the district court abused its discretion in its application of 35 U.S.C. § 252.

John Bean also argues that genuine issues of material fact remain as to willful infringement. We disagree. If there is no infringement, there cannot be willful infringement. *See* 35 U.S.C. § 284. Once the district court granted Morris's motion for summary judgment on the affirmative defense of equitable intervening rights, it did not have to reach the question of willful infringement. To reach its decision the district court relied on findings of fact—e.g., the eleven-year delay before seeking reexamination and the restructuring of Morris's business to the accused product—to support its determination. *See, e.g.*, *Decision*, 2019 WL 7176779 at *3. Thus, once the district court granted Morris equitable intervening rights, John Bean was left with no basis to pursue a willful infringement claim.

## CONCLUSION

We have considered the remainder of the parties' arguments, including the parties' correspondences made pursuant to Fed. R. App. P. 28(j) concerning supplemental authority and find them unpersuasive. Accordingly, we determine that the district court did not abuse its discretion in granting-in-part Morris's motion for summary judgment as to equitable intervening rights.

## **AFFIRMED**

## COSTS

Costs awarded to Morris.