**CENTIGRAM COMMUNICATIONS CORPORATION, Plaintiff,**

v.

**Bruce LEHMAN, Assistant Secretary of Commerce and Commissioner of Patents and Trademarks, Defendant,**

and

**VMX, Inc., Intervenor–Defendant.**

**Civ. A. No. 94 CV 773.**

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 8, 1994.

Ralph A. Mittelberger, Barry E. Bretschneider, Fish & Richardson, Washington, DC, David A. Henderson, John E. Gartman, Jodi

L. Sutton, John W. Thornburgh, Fish & Richardson, Menlo Park, CA, for plaintiff.

Helen F. Fahey, U.S. Atty., Dennis E. Szybala, Asst. U.S. Atty., Alexandria, VA, Nancy J. Linck, Sol., Albin F. Drost, Deputy Sol., Richard E. Schafer, Acting Associate Sol., Joseph G. Piccolo, Asst. Sol., Arlington, VA, for defendant.

Anne E. Brookes, Honigman Miller Schwartz and Cohn, Houston, TX, Thomas Earl Patton, Tighe Patton Tabackman & Babbin, Washington, DC, Sid Leach, Honigman Miller Schwartz and Cohn, Houston, TX, for intervenor-defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

The sole question presented in this case is whether the Commissioner of Patents and Trademarks (the "Commissioner") exceeded his lawful authority and acted contrary to law in promulgating 37 C.F.R. § 1.378(c). The Commissioner promulgated this Patent and Trademark Office ("PTO") regulation to implement the provisions of the 1992 Patent Act Amendments ("1992 Amendments")[1], which amendments allow patent owners to revive patents that expire because the owners unintentionally fail to make timely maintenance fee payments. The disputed regulation, *inter alia*, makes the 1992 Amendments applicable to certain patents that expired prior to the October 1992 effective date of the Amendments. In this respect, according to plaintiff Centigram Communications Corp. ("Centigram"), the regulation impermissibly gives the 1992 Amendments retroactive effect. The Commissioner, joined by intervenor VMX, Inc. ("VMX"), counters that the regulation's coverage of certain patents that expired prior to October 1992 is squarely authorized by the language of the Patent Act and the 1992 Amendments.

For the reasons that follow, the Court concludes that the regulation is faithful to the terms of the 1992 Amendments and hence the Commissioner did not exceed his authority or act unlawfully in promulgating it.

### I.

The dispositive facts in this case are undisputed and may be succinctly stated. Before doing so, however, it is important to set the stage by reviewing briefly the pertinent legislative history.

Prior to 1980, a patent, once issued, remained in full force and effect for its entire seventeen year life without any further action required of the patent owner. In 1980, this changed. In that year, Congress amended the patent laws to require patent owners to pay periodic "maintenance fees" to the PTO to keep the patent in effect and prevent it from expiring. *See* Patent Act of 1980, Pub.L. 96–517, 94 Stat. 3015, 3017, codified at 35 U.S.C. § 41(a) (1980).[2] The new statutory scheme was simple. Maintenance fees were due 3½, 7½ and 11½ years after the patent issue date. Patent owners were given a six month grace period, which began to run on the date the fee became due. If maintenance payments were not paid by the end of the grace period, the patent irrevocably expired. No provision was made for the payment of maintenance fees for any reason after the expiration of the grace period, nor was any provision made for the reinstatement of expired patents.

Congress changed this scheme two years later by amending the maintenance fee provisions to allow the Commissioner to accept late fees—fees paid after the expiration of the six month grace period—where the patent owner could show that the delay was "unavoidable." Pub.L. 97–247, § 3(c), 96 Stat. 318, codified at 35 U.S.C. § 41(c)(1) (1982).[3] The 1982 amendments also recog-

---

**1.** Pub.L. No. 102–444, 106 Stat. 2245 (1992), codified at 35 U.S.C. § 41(c).

**2.** Congress' goal in enacting the 1980 amendment was to ensure that the PTO's work was funded more by users of the PTO than by the general public. *See* H.R.Rep. No. 96–1307, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A. 6460, 6463. This goal, the lawmakers

noted, had been achieved by the patent maintenance fee systems in place in many advanced industrial countries. *Id.*

**3.** Section 41(c)(1), read in part:

(1) *The Commissioner may accept the payment of any maintenance fee* required by subsection (b) of this section *after the six-month grace period if the delay is shown to the satisfaction*

nized intervening rights for those who made, purchased or used a patented invention during the time period between the patent's expiration for failure to pay the maintenance fee and its subsequent reinstatement.[4] Thus, the 1982 amendments sought "to avoid an inequitable loss of patent rights" by allowing for the possibility of later patent reinstatement if timely payment were shown to be "unavoidable." And, at the same time, the 1982 changes protected "the rights of one who began using or took steps to begin use of a patent which had expired for failure to pay a maintenance fee but which was subsequently reestablished by acceptance of the late payment." H.R.Rep. No. 97–542, 97th Cong.2d Sess., 1982 U.S.C.C.A.N. 765, 772. The PTO, in 1984, promulgated regulations implementing the late maintenance fee payment and expired-patent reinstatement provisions of the 1982 amendments. *See* 37 C.F.R. § 1.378 (1993). These regulations established procedures for petitioning the Commissioner to accept late fee payments on the ground of unavoidable delay, thereby reinstating an expired patent.

In construing the temporal reach of the 1982 amendments, the PTO initially applied its provisions only to patent applications filed after the statute's effective date. Congress apparently disagreed and, in response, enacted Public Law 98–622 in 1984. That law clarified that the "unavoidable" delay provision was also to apply to applications filed after the imposition of the maintenance fee structure in 1980, but before the 1982 amendments. The PTO obediently amended its regulations accordingly. 37 C.F.R. § 1.378 (as amended at 50 Fed.Reg. 9383 (1985)).

These maintenance fee payment and patent reinstatement provisions remained essentially unchanged until 1992. In that year, Congress, concerned that the "unavoidable" delay standard was too stringent, amended 35 U.S.C. § 41(c) to provide an additional remedy for patent owners who failed to pay maintenance fees prior to the expiration of the six-month grace period. *See* 138 Cong. Rec. E 1688 *et seq.* (June 4, 1992) (statement of Rep. McCollum). The additional remedy embodied in the 1992 Amendments allowed patent owners whose patents had expired for nonpayment of maintenance fees to have their patents reinstated upon a showing, satisfactory to the Commissioner, that the nonpayment of the fee was either *unintentional* or unavoidable. More specifically, the 1992 Amendments allow the Commissioner to

> "accept the payment of any maintenance fee required by … [35 U.S.C. § 41(b)] which is made within twenty-four months after the six-month grace period if the delay is shown to the satisfaction of the Commissioner to have been unintentional…."

35 U.S.C. § 41(c)(1) (1992).[5] Congress declared that this provision "shall take effect on the date of the enactment of this Act," namely October 23, 1992.

Anticipating passage of the 1992 Amendments, the Commissioner, in September 1992, published a notice of proposed rulemaking to revise 37 C.R.F. § 1.378(c) to conform it to the expected 1992 Amendments. After receipt and evaluation of comments, a notice of a final rule implementing the 1992 Amendments was published in August 1993.

---

*of the Commissioner to have been unavoidable….*
If the Commissioner accepts payment of a maintenance fee after the six-month grace period, the patent shall be considered as not having expired at the end of the grace period. Patent Act of 1982, Pub.L. No. 97–247, § 3(c), 96 Stat. 317, 318 (emphasis added).

4. The intervening rights provision of § 41(c)(2) reads, in part:
No patent, the term of which has been maintained as a result of the acceptance of a payment of a maintenance fee under this subsection, shall abridge or affect the right of any person or his successors in business who made, purchased or used after the six-month

grace period but prior to the acceptance of a maintenance fee under this subsection anything protected by the patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased, or used. Patent Act of 1982, Pub.L. No. 97–247, § 3(c), 96 Stat. 317, 318 (C000364–65).

5. The remaining portion of § 41(c)(1) retains the previous standard for reinstating patents, allowing the Commissioner also to accept late maintenance fee payments "at any time after the six-month grace period if the delay is shown to the satisfaction of the Commissioner to have been unavoidable."

The final rule promulgated by the Commissioner appears at 37 C.F.R. § 1.378(c) and provides, in pertinent part, as follows:

(a) The Commissioner may accept the payment of any maintenance fee due on a patent after expiration of the patent if, upon petition, the delay in payment of the maintenance fee is shown to the satisfaction of the Commissioner to have been unavoidable (paragraph (b) of this section) or unintentional (paragraph (c) of this section) and if the surcharge required by § 1.20(i) is paid as a condition of accepting payment of the maintenance fee. If the Commissioner accepts payment of the maintenance fee upon petition, the patent shall be considered as not having expired, but will be subject to the conditions set forth in 35 U.S.C. § 41(c)(2).

(b) Any petition to accept an unintentionally delayed payment of a maintenance fee filed under paragraph (a) of this section must be filed within twenty-four months after the six-month grace period provided in § 1.362(e) and must include:

(1) The required maintenance fee set forth in § 1.20(e) through (g);

(2) The surcharge set forth in § 1.20(i)(2); and

(3) A statement that the delay in payment of the maintenance fee was unintentional.

Nor is there any doubt that the Commissioner intended this regulation to be applicable, *inter alia*, to patents that expired prior to October 23, 1992 as a result of nonpayment of maintenance fees. When a comment to the proposed regulations inquired as to the regulation's effect on patents that expired before October 23, 1992, the PTO responded that the regulation covered all patents that expired within the twenty-four months preceding that date. 58 Fed.Reg. 44279 (1993). Consistent with this, the Commissioner, acting pursuant to the challenged

regulation, has allowed the reinstatement of between 300 and 400 patents that expired before October 23, 1992. In so doing, the Commissioner made manifest his view, challenged here, that the regulation's coverage of these patents is authorized by the 1992 Amendments.

## II.

The genesis of this particular dispute is a California action in which Centigram has been charged with infringement of U.S. Patents Nos. 4,747,124 and 4,783,796, the so-called "Ladd patents."[6] The first maintenance fees due for both were not timely paid. The six-month grace period for payment of the first maintenance fee for the Ladd '124 patent expired on May 24, 1992, some five months before the effective date of the 1992 Amendments. And the six-month grace period for payment of the first maintenance fee due for the Ladd '796 patent expired on November 8, 1992, which was after the effective date of the Amendments.

Pursuant to 37 C.F.R. § 1.378(c), VMX filed petitions in February 1994, asking the Commissioner to accept unintentionally late fee payments for both patents. VMX asserted that the petitions met all the requirements of the Amendments and the regulation. Specifically, while the six-month grace periods had expired for both patents, the petitions were filed within the twenty-four month period prescribed in both the 1992 Amendments and 37 C.F.R. § 1.362(e). Moreover, the petitions included the required maintenance fees and surcharges, together with the statement, required by the regulation, "that the delay in payment of the maintenance fee was unintentional." 37 C.F.R. § 1.378(c).[7]

On learning of VMX's petitions, Centigram filed a protest pursuant to 37 C.F.R. § 1.182, opposing reinstatement of the VMX patents.

---

**6.** *Centigram Communications Corp. v. Dytel Corp.*, No. c–91–20504 (N.D.Cal.). Plaintiff in that action is seeking declaratory relief regarding various validity and infringement issues involving the Ladd patents.

**7.** VMX contends that in the event this Court rules the 1992 Amendments inapplicable to patents

that expired prior to October 23, 1992, the '124 Ladd patent should be returned to the PTO for reexamination under the more stringent "unavoidable" standard. Whether the '124 Ladd patent passes muster under this standard is a question that is neither presented here nor addressed.

The Commissioner denied the protest, granted the petitions, and allowed the reinstatement of the Ladd patents. In so doing, the Commissioner again made manifest his view that the 1992 Amendments authorized the applicability of the regulation to patents that expired prior to the effective date of the Amendments. Centigram then filed this action, challenging the Commissioner's interpretation of the 1992 Amendments.[8]

### III.

■ Analysis properly begins[9] with *Chevron*'s teaching that courts presented with challenges to the lawfulness of a regulation must engage in a two step analysis. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, courts must decide whether Congress has "directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. at 2781. If so, the judicial task is ended. Courts must give effect to Congress' clearly expressed intention, and if such intention is manifest in the statute's language, there is no need to proceed to the second step of the analysis. But if the answer to the first inquiry is negative, that is, where Congress has been silent regarding the "precise question at issue," or if the statutory language is ambiguous, then courts must next ask whether the agency's regulation stems from "a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. And, in this regard, courts may not substitute their own interpretation of the statute for that of the agency, provided the agency's construction is "permissible." *Id.* at 844, 104 S.Ct. at 2782. Finally, in

determining whether an agency's construction is permissible, courts must give "considerable weight" to an agency's interpretation of the statutes it has been directed to administer. *Id.*

■ Under *Chevron,* then, the first inquiry is whether Congress clearly addressed the "precise question at issue," namely, whether the provisions of the 1992 Amendments apply to patents that expired before the effective date, October 23, 1992. The statute's plain language leaves no doubt that Congress squarely addressed this question. Thus, the 1992 Amendments permit the Commissioner to accept, beginning October 23, 1992, "any maintenance fee" prescribed by subsection (b) that is "made within twenty-four months" of the patent's expiration, provided the delay in payment was "unintentional." 35 U.S.C. § 41(c)(1). The literal command of this language grants the Commissioner the authority to reinstate *any patent* meeting those specific requirements as of the effective date of the Amendments. Squarely within these requirements are patents that expired on or after October 23, *1990* through the owner's unintentional delay in maintenance fee payments. By the statute's plain language, therefore, these patents may be revived, at the Commissioner's discretion, upon proper petition accompanied by the appropriate maintenance fee and surcharges.

In short, Congress spoke directly to the question of the 1992 Amendments' temporal span. It said that the Commissioner may accept unintentionally late fees for certain patents that expired prior to the effective

---

8. Because this question was also presented in the California action, the Court, on motion of VMX, ruled that this action would be resolved by this Court unless the district judge in the California patent infringement action intended or wished to decide the question, in which event this action would be transferred to the Northern District of California for disposition by that court. By order dated July 18, 1994, Judge Ingram of the Northern District of California deferred to this Court's resolution of the question.

9. As an initial matter, the Commissioner has challenged Plaintiff's standing to bring this action. This challenge is not well founded, for Centigram, as an accused infringer, clearly falls within the "zone of interests to be protected or

regulated by the statute...." *Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), *quoted in Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). *See also Boeing Co. v. Commissioner of Patents and Trademarks*, 853 F.2d 878, 882 (Fed.Cir.1988) (holding that mere allegation by third party that it *"may* seek to practice the technology ... circumscribed ... by the claims" of the patent was insufficient to place third party within the zone of interests to be protected by the patent statute, but suggesting that threat of infringement suit against third party would be sufficient).

date of the Amendments, specifically any such patents that expired on or after October 23, 1990. Therefore, Congress' intent is clear; the judicial task is at an end; and the Court need not reach the second *Chevron* inquiry.[10]

Seeking to avoid this result, Centigram argues that Congress intended the Amendments' October 23, 1992 effective date to trigger new rights for patent owners.[11] Thus, the argument goes, only active and future patents can be affected by the more lenient maintenance fee late payment scheme. Moreover, Centigram argues that even assuming the challenged regulation finds support in the "literal" statutory language, it is nonetheless invalid because it results in an impermissible retroactive application of the 1992 Amendments.

■ Several flaws fatally undermine Centigram's position. First, Centigram's position is not faithful to the express language of the 1992 Amendments. Indisputably, courts must abide by a statute's unambiguous terms, whether or not those terms provide for retroactive effect. As the Supreme Court stated in *Landgraf v. USI Film Products,* "the court's first task is to determine whether Congress has expressly prescribed the statute's proper [temporal] reach." —— U.S. ——, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d

229 (1994). If Congress has done so, courts must give the statute its intended temporal effect. *Id.* See also *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (agency should apply statute retroactively when "[its] language requires this result") (*quoted in Landgraf,* —— U.S. at ——, 114 S.Ct. at 1500). In this case, Congress did "expressly prescribe[ ] the statute's proper reach." As noted, the 1992 Amendments' explicit command allows the Commissioner to reach back in time up to twenty-four months prior to October 23, 1992 and resurrect certain expired patents. Thus, starting October 23, 1992, "[t]he Commissioner may accept the payment of any maintenance fee ..." to revive these unintentionally expired patents. Centigram's interpretive error lies in viewing the effective date of the 1992 Amendments as the threshold for granting patent owners a new option should they thereafter inadvertently fail to make timely maintenance payments, rather than as simply the date that triggers the Commissioner's authority to accept unintentionally late payments. Although Centigram is certainly correct that courts must exercise caution in applying new statutes to past events, courts cannot disregard plain and unambiguous statutory commands to do so.

---

10. Even if this were not so, *Chevron's* second inquiry leads to the same result. The challenged regulation clearly reflects a "permissible," if not compelled, reading of the 1992 Amendments, given the plain language of the Amendments and their underlying Congressional purpose, which is to alleviate the burden of lost patent ownership for those patent owners who inadvertently, but avoidably, fail to make timely maintenance fee payments.

11. In support of its view that Congress did not intend the 1992 Amendments to apply to patents that had already expired as of October 23, 1992, Centigram points to an earlier version of the bill that included language to the effect that the Amendments would apply to "any patent for which a maintenance fee was due before such date of enactment and for which such grace period expired not more than 18 months before such date of enactment." House Bill H.R. 5328. This argument is unpersuasive because the omission of this language from the final version of the 1992 Amendments permits two equally likely, but contradictory, inferences. While it might indicate that Congress decided against applying the

Amendments to patents that expired prior to the effective date, it is equally likely that the omission of the language simply reflects Congress' recognition that the language was unnecessary given that the remaining terms of § 41(c)(1) already covered patents that had expired before the effective date.

Nor is Centigram's reliance on the 1984 amendments (stating that the 1982 amendments should apply to patent applications filed before their effective date) dispositive of Congressional intent. In these 1984 amendments, Congress was correcting the PTO's misinterpretation of the 1982 amendments, not signalling a change of mind about the temporal reach of the 1982 amendments.

In any event, arguments about Congressional intent based on reading the tea leaves of legislative history, however inviting, must come to naught where, as here, the statute's plain language is contrary. A coherent theory of statutory interpretation must, at a minimum, include the presumption that Congress intends what is expressed in the plain meaning of the statutory language.

The second flaw in Centigram's analysis lies in the fact that the 1992 Amendments, as construed by the challenged regulation, are not retroactive under *Landgraf*'s definition of that term. The Supreme Court in *Landgraf* made clear that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law." —— U.S. at ——, 114 S.Ct. at 1499 (citations omitted). Rather, a statute has retroactive effect only if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at ——, 114 S.Ct. at 1505. The challenged regulation does none of these; its coverage of patents that expired prior to the October 23, 1992 effective date does not impair rights that a party possessed when he acted, does not increase a party's liability for past conduct, and does not impose new duties with respect to completed transactions. Indeed, Congress specifically avoided those results through its enactment of § 41(c)(2). In that section, Congress expressly safeguarded rights that others may have acquired in a patented invention between the time of the patent's expiration by reason of an unintended failure to pay a maintenance fee and its subsequent reinstatement under § 41(c)(1). Thus, Congress deliberately and effectively protected those who relied on the prior law regarding patent reinstatement from subsequent infringement actions under the new law. Nor does it matter that those who hoped eventually to begin using an expired patent may be disappointed by its reinstatement. As *Landgraf* teaches, such "upset[ ] expectations based in prior law" are not indicative of a statute's retroactive effect. —— U.S. at —— & n. 24, 114 S.Ct. at 1499 & n. 24.

Finally, this is not one of those rare cases where strict adherence to the literal terms of a statute produces the sort of absurd and unintended results that would justify departure from plain statutory language. *See, e.g., Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989); *Sheridan v. United States*, 487 U.S. 392, 402–03, 108 S.Ct. 2449, 2455–56, 101 L.Ed.2d 352 (1988). In passing the 1992 Amendments, Congress intended to relax the standard for filing late patent maintenance fees and thereby increase the incidence of continued patent ownership. Allowing reinstatement of certain patents that had expired prior to the statute's effective date is wholly consistent with that purpose. And given the protection for intervening rights embodied in § 41(c)(2), no countervailing policy renders the literal reading suspect.

In sum, the PTO acted lawfully in promulgating 37 C.F.R. § 1.378(c), and the regulation is upheld. Therefore, the Court **GRANTS** the Commissioner's motion for summary judgment, **GRANTS** VMX's counter-motion for summary judgment, and **DENIES** Centigram's motion for summary judgment.

An appropriate order shall issue.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to all counsel of record and to the presiding judge in *Centigram Communications Corp. v. Dytel Corp.*, Civil Action No. C–91–20504 (N.D.Cal.).