**HADEN SCHWEITZER CORPORATION,
Thermal Engineering Corporation,
and Willie H. Best, Plaintiffs,**

v.

**ARTHUR B. MYR INDUSTRIES, INC.
and Richard P. Marshke,
Defendants.**

No. 94–CV–73958–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 20, 1995.

Joseph J. Shannon, Jaffe Raitt, Detroit, MI, for plaintiffs.

Douglas W. Sprinkle, Ellen Cogen Lipton, Birmingham, MI, for defendants.

## *OPINION*

DUGGAN, District Judge.

### *I. Introduction*

On September 29, 1994, plaintiffs Haden Schweitzer Corporation ("Haden"), Thermal Engineering Corporation ("TEC") and Willie H. Best ("Best") filed a patent infringement action against defendants Arthur B. Myr Industries, Inc. ("Myr") and Richard P. Marshke ("Marshke"), Myr's president, for defendants' installation of a curved wall, radiant oven at Ford Motor Company's Kansas City facility ("Ford–Kansas City"). Currently before this Court are defendants' motion for partial summary judgment and plaintiffs' cross-motion for partial summary judgment [1] based on Patent No. 4,546,553's ("553 Patent") enforceability from October 15, 1989 through May 12, 1994. *See* 35 U.S.C. § 41(c)(2).

---

1. Plaintiffs' cross-motion asks this Court to enter partial summary judgment *against* defendants as to their first affirmative defense of intervening rights and ¶¶ 24–27 of their counterclaim. Defendants' first affirmative defense avers that '553 Patent is unenforceable to acts occurring between October 15, 1989 and May 12, 1994. (Answer to Compl. at 3). Paragraphs 24 through 27 of defendants' counterclaim are based on that same premise. *Id.* at 5.

## II. Background

For all patent applications filed after December 12, 1980 (which includes '553 Patent), maintenance fees must be paid to the United States Patent and Trademark Office ("PTO") by the patent owners no later than the 4th, 8th and 12th years after the date of the patent's issuance. *See* 35 U.S.C. § 41(b).[2] PTO maintenance fees are calculated at two different rates, one for "large" entities and another for "small" entities. *Id.* Under 35 U.S.C. § 41(h)(1), fees charged under subsection (b) shall be reduced by fifty percent with respect to "small entities," which includes small businesses, independent inventors or nonprofit organizations. *See Centigram Communications Corp. v. Lehman,* 862 F.Supp. 113, 114–16 (E.D.Va.1994), *appeal dismissed,* 47 F.3d 1180 (Fed.Cir.1995) and *Laerdal Medical Corp. v. Ambu, Inc.,* 877 F.Supp. 255, 256–57 (D.Md.1995) for a discussion of § 41's history. "[T]he purpose of implementing such a maintenance fee system was to have patent owners pay for certain operations of the PTO." *Id.* at 256.

On October 15, 1985, the '553 Patent, claiming "Radiant Wall Oven and Process of Drying Coated Objects," was issued. At that time, the patent owner (Best) was a "small entity," which would entitle him to pay the reduced maintenance fee under §§ 41(b) and 41(h)(1). However, in mid–1988, TEC and Best entered into an agreement with Haden regarding '553 Patent. Before the first maintenance fee became due on October 15, 1989 (four years[3] from the patent's issuance), the patent was licensed to Haden, a "large entity."[4] In fact, on April 6, 1989, the patent owner (through counsel) paid the first maintenance fee ($225) as a "small entity."

On June 9, 1989, defendants were awarded a contract for installation of the curved wall oven at Ford–Kansas City based on a bid previously submitted. On June 14, 1989, a meeting was held between Ford Motor and various persons (including defendant Marshke and Haden representatives) regarding paint building and the upgrade of the paint system at the Kansas City plant. (Pls.' Mem. in Resp., Ex. 5). Defendants allege that they completed the oven on December 1, 1989.[5]

On April 18, 1994, plaintiffs learned for the first time that they erred in remitting the "small entity" fee in April of 1989. Once discovered, Haden moved for the PTO to accept late payment of the proper maintenance fee. On May 12, 1994, the PTO accepted Haden's late payment.

On September 29, 1994, plaintiffs filed the present lawsuit against defendants for patent infringement of '553 Patent based on defendants' oven installation at Ford–Kansas City.

On March 22, 1995, defendants filed their present motion for partial summary judgment. Defendants contend that they are entitled to the affirmative defense of "absolute intervening rights" based on '553 Patent's invalidity from October 15, 1989 through May 12, 1994 because of plaintiffs' failure to remit the proper maintenance fee to the PTO in April of 1989. On April 13, 1995, plaintiffs filed their cross-motion for partial summary judgment, arguing that because defendants did not *rely* on the patent's infirmity, defendants are not entitled to any "intervening rights."[6] Therefore, the legal issue to be resolved by this Court is whether reliance on the part of defendants is required

---

2. Section § 41(b) requires that varying amounts be paid to the PTO 3½, 7½ and 11½ years from the patent's issuance. That section provides patent owners with a six-month grace period following those year designations during which time the owners can remit the required payments.

3. *See* n. 2, *supra.*

4. The parties do not dispute that as of the due date of '553 Patent's first maintenance fee, plaintiffs should have remitted fees that applied to "large entities."

5. On December 12, 1994, over two months after the present lawsuit was filed, Marshke sent a letter to Haden indicating that the date of Job Number 11098, defendants' "last infringing oven installation" at Ford–Kansas City was "1989/90." (Pls.' Mem. at 15, Ex. 1).

6. Defendants concede that they did not rely on '553 Patent's invalidity but argue instead that said reliance is immaterial based on their entitlement to "absolute" intervening rights.

in order for defendants to assert the affirmative defense of "intervening rights."[7]

### III. Discussion

Defendants contend that the first sentence of 35 U.S.C. § 41(c)(2) entitles them to the affirmative defense of "absolute" intervening rights during the period of October 15, 1989 through May 12, 1994, and that because their "infringing" activity occurred between those dates, relief should be granted in their favor.

Plaintiffs contend that defendants did not *rely* on the invalidity of plaintiffs' patent based on the maintenance fee infirmity, and therefore, defendants are prevented from asserting the defense of "intervening rights" under either the "equitable" or "absolute" doctrine.[8] Plaintiffs also contend that even if the Court concludes, based on defendants' "intervening rights" defense, that the activity between October 15, 1989 and May 12, 1994 would not constitute "infringing" activity on the part of defendants, such defense will not bar plaintiffs' claim because defendants cannot meet their burden of proof that the oven installation was "made, purchased or used" by defendants *after* October 15, 1989 and prior to May 12, 1994. Plaintiffs contend that a substantial portion of the infringing oven was *likely to have been* commenced and completed *before* October 15, 1989.

### A. Intervening Rights Doctrine

35 U.S.C. § 41(b) provides that:

[u]nless payment of the applicable maintenance fee is received in the Patent and Trademark Office on or before the date the fee is due or within a grace period of six months thereafter, the patent will expire as of the end of such grace period.

35 U.S.C. § 41(b).[9] Section 41(c)(1) provides that:

[t]he Commissioner may accept the payment of any maintenance fee required by subsection (b) of this section ... if the delay is shown to the satisfaction of the Commissioner to have been unintentional, or ... unavoidable.[10] ... If the Commissioner accepts payment of a maintenance fee after the six-month grace period, the patent shall be considered as not having expired at the end of the grace period.

35 U.S.C. § 41(c)(1). *See* 37 C.F.R. § 1.378, which provides that "[i]f the Commissioner accepts payment of the maintenance fee upon petition, the patent shall be considered as not having expired, *but will be subject to the conditions set forth in 35 U.S.C. 41(c)(2)."* (emphasis added).

The intervening rights provision found in § 41(c)(2), upon which defendants rely in their present motion, provides:

[Sentence One] No patent, the term of which has been maintained as a result of the acceptance of a payment of a maintenance fee under this subsection, shall abridge or affect the right of any person or his successors in business who made, purchased or used after the six-month grace period but prior to the acceptance of a maintenance fee under this subsection anything protected by the patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased, or used. [Sentence Two] The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased, or used as specified, or for the manufacture, use or sale of which substantial preparation was made after the six-month grace period but before the acceptance of a maintenance fee under this subsection, and it may also provide for the continued practice of any process, practiced, or for the practice of which substantial preparation was made, after the six-month grace period but prior to the acceptance of a maintenance fee under this subsection, to the extent and under such

---

7. On May 25, 1995, this Court heard oral argument on the parties' motions.

8. Defendants indicate that because they are not seeking *prospective* relief, the "equitable" intervening rights doctrine is inapplicable in this case.

9. "Payment of less than the required amount ... will not constitute payment of a maintenance fee...." 37 C.F.R. § 1.366(b).

10. Defendants concede that a proper showing for acceptance of the late maintenance fee was made in plaintiffs' case.

terms as the court deems equitable for the protection of investments made or business commenced after the six-month grace period but before the acceptance of a maintenance fee under the subsection.

35 U.S.C. § 41(c)(2).[11] That subsection's legislative history provides that "[t]he intervening rights provision in section 41(c)(2) is similar to the intervening rights provision in 35 U.S.C. § 252 concerning reissued patents." H.R.Rep. No. 97–542, 97th Cong., 2d Sess. at 772 (1982). No published cases discuss an alleged patent infringer's entitlement to intervening rights under § 41(c)(2). Therefore, this Court looks to 35 U.S.C. § 252, involving reissued patents, and cases interpreting § 252.

Under section 251,

[w]henever any patent is ... deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent ... reissue the patent for the invention disclosed in the original patent.... No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251. The first paragraph of section 252 states that:

[t]he surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continua-

tion thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252, 1st ¶.

Section 252's second paragraph, which outlines its intervening rights provision, states:

[Sentence One] No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, *unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.*[12] [Sentence Two] The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.[13]

35 U.S.C. § 252, 2d ¶ (emphasis added).

The first paragraph's language "expressly prevents a court from giving any consideration to the protection of intervening rights. The second paragraph of section 252 modifies the first paragraph, however, so as to protect intervening rights." *Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.,* 731 F.2d 818, 829 (1984), *appeal after remand,* 756 F.2d 1574 (Fed.Cir.1985).

■ "The underlying rationale for intervening rights is that the public has the right to use what is not specifically claimed in the

---

**11.** Defendants contend that they are entitled to "absolute" intervening rights under the first sentence of § 41(c)(2).

**12.** The emphasized language from the first sentence of § 252's second paragraph mirrors the corresponding language in § 41(c)(2), aside from the former's reference to "reissued patents" and

the latter's reference to "maintenance fee payments."

**13.** The second sentence of § 41(c)(2) tracks the language of the second sentence in § 252's second paragraph.

original patent." *Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*, 756 F.2d 1574, 1579 (Fed.Cir.1985) ("*Seattle Box II*"). "The doctrine of intervening rights, by the terms of the statute . . . need be considered only when the infringement found is based upon claims of the reissue patent which were not contained in the original patent." *Akron Brass Co. v. Elkhart Brass Mfg. Co.*, 353 F.2d 704, 708 (7th Cir.1965).[14] *See* § 252's emphasized language, cited *supra.*

■ At oral argument on May 25, 1995, plaintiffs' counsel acknowledged in his argument in opposition to defendants' present motion that if this Court were to construe § 41(c)(2)'s language "as it literally reads on its face, the defendants win." However, he argued that this Court should look beyond that section's explicit language and look to case law interpreting the "intervening rights" defense found in 35 U.S.C. § 252 and require "reliance" on the part of defendants in order for this defense to bar plaintiffs' claims. Plaintiffs base their argument that "reliance" is required to establish an intervening rights defense on two cases: *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 810 F.2d 1113 (Fed. Cir.1987) and *Quad Envtl. Technologies v. Union Sanitary Dist.*, 17 U.S.P.Q.2d 1667, 1990 WL 288712 (N.D.Cal.1990), *rev'd on other grounds*, 946 F.2d 870 (Fed.Cir.1991). In this Court's opinion, neither of these cases supports plaintiffs' position.

In *Slimfold*, the patent issued in May, 1974. On April 17, 1984, the patent reissued with additional language in claims 1–3. The Federal Circuit concluded that the defendant did not acquire, because of the additional language in the claims on reissue, the right to have practiced the invention of claims 1–3 before the date of reissue. 810 F.2d at 1115. The Court found that in requiring additional language to be incorporated into claims 1–3, the patent examiner "was correcting a drafting error that the prior examiner . . . could and probably should have spotted when the original patent was examined." *Id.* at 1117. In rejecting the defendant's claim that it was entitled to rely on this "defect," the Court stated that "[t]his amendment did not en-

large the scope of the claims, and [the defendant] did not demonstrate that it relied to its detriment on any aspect of the original claims that was *changed by reissue.*" *Id.* (emphasis added). The Court went on to find that:

> 35 U.S.C. § 252 protects third persons who rely on the scope of a claim as originally granted, as against subsequent changes in scope by reissue. In the case at hand, the district court correctly held that the scope of reissued claims 1 through 3 is identical to that of the original claims, and that the claims are substantively the same.

*Id.*

It is clear that the Court's reference to a "reliance" requirement is only relevant and applicable to situations in which there has been a "change" in the scope of the claims. In § 41(c)(2)'s context, the scope of the claims always remains the same; consequently, the issue of "reliance" is not relevant.

*Quad* presents even less support for plaintiffs' position. In *Quad*, the district court considered the plaintiff's motion for summary judgment as to the defendant's affirmative defense of intervening rights. 17 U.S.P.Q.2d at 1668, 1990 WL 288712. The court held that the defendant was precluded from invoking the defense of "intervening rights" because there was no substantive change between the patent as originally issued ("'461") and the re-examined patent ("new '461"). The court concluded that the "amendment was merely clarifying and therefore precludes [the defendant] from invoking any intervening rights in the '461 patent." *Id.* at 1670, 1990 WL 288712.

The *Quad* plaintiff alternatively argued that even if the amendment did substantively change the scope of the claim, in order to establish intervening rights, the defendant must also show that the defendant relied on some perceived infirmity in the original patent, but that the defendant can show no such reliance. The court agreed that the defendant had not shown any reliance. In support of its statement that "some degree of reli-

---

14. Said requirement does not apply under § 41(c)(2), because the text of the original patent and the reinstated patent (after payment of the proper maintenance fee) is identical.

ance on the original patent is required to establish intervening rights," *id.*, the court relied on *Slimfold, supra* and *Halliburton Co. v. Western Co. of N. Am.*, 10 U.S.P.Q.2d 1973, 1983, 1988 WL 391521 (W.D.Okla.1989), *aff'd*, 935 F.2d 281 (Fed.Cir.1991).

However, as previously indicated, *Slimfold* does not support the proposition that "reliance" is required where there has been no substantive change. *Halliburton* is distinguishable, because *Halliburton* did not involve the defense of *absolute* intervening rights; rather, *Halliburton* involved "equitable" intervening rights, a defense not asserted in this case.

> Western has pleaded the defense of "equitable intervening rights" as provided for in the last sentence of 35 U.S.C. § 252. The applicable portion of 35 U.S.C. § 252 reads as follows:
>
>> The court before which such matter is in question may provide ... for the continued practice of any process patented by the reissue ... under such terms as the court deems equitable....

*Id.* Several courts, including most recently the Federal Circuit in 1993, discuss the distinction between the first and second sentences of the "intervening rights" provisions, with the first establishing "absolute" rights and the second establishing "equitable" rights. In the "absolute" context, "reliance" is not required.

In *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed.Cir.1993), the Court discussed "intervening rights" under § 252. The Court found first that the second paragraph of § 252 limits the scope of a reissued patent, providing for

> two separate and distinct defenses under the doctrine of intervening rights: "absolute" intervening rights and "equitable" intervening rights. *The paragraph consists of two sentences which address two distinct situations and provide two different types of protection.*

*Id.* at 1220 (emphasis added). *See Henkel Corp. v. Coral, Inc.*, 754 F.Supp. 1280, 1320 (N.D.Ill.1990), *aff'd*, 945 F.2d 416 (Fed.Cir. 1991) ("[t]hese two doctrines ... are distinctly different in bases and result"); *Windsurfing Int'l, Inc. v. Ostermann*, 655 F.Supp. 408, 410 (S.D.N.Y.1987).

> The first sentence [of § 252] defines "absolute" intervening rights. This sentence provides an accused infringer with the absolute right to use or sell a product that was made, used, or purchased before the grant of the reissue patent as long as this activity does not infringe a claim of the reissue patent that was in the original patent. *This right is absolute.* In the words of the statute, "[n]o reissue patent *shall* abridge or affect the right of any person." *As long as the use or sale of the accused product does not infringe a claim of the reissue patent that also was in the original patent, the owner of the reissued patent has no recourse under the Patent Act.*

> This absolute right extends only to anything made, purchased, or used before the grant of the reissue patent. In other words, it covers products already made at the time of reissue.

> The legislative history of section 252 underscores the meaning of the words in the first sentence:
>
>> *The specific things made before the date of reissue, which infringe the new reissue claims, are absolutely free of the reissued patent and may be used or sold after the date of reissue without regard to the patent.*

*BIC*, 1 F.3d at 1220–21 (citations omitted) (emphasis added). *See Ostermann*, 655 F.Supp. at 410 ("the 'absolute' intervening rights defense ... absolutely protects the right of an infringer of a reissued patent to use or sell specific things which were actually made, purchased or used before the grant of the reissue patent").[15] *See also Henkel*, 754

---

**15.** In *Ostermann*, the defendant asserted that it was entitled to "absolute" intervening rights, specifically its right to protection against liability for the sale of sailboards which were manufactured prior to the date of the reissued patent. 655 F.Supp. at 410. Although the Federal Circuit previously rejected the defendant's assertion of "equitable" intervening rights, wherein the defendant sought the right to *continue* to manufacture sailboards, the New York district court found that the defendant's "absolute" intervening rights "must be recognized 'unless the ...

F.Supp. at 1320.[16]

Discussing "equitable" intervening rights as provided in the second sentence of § 252's second paragraph, the *BIC* Court found that:

> [b]y its terms, this sentence provides for the court to grant much broader rights than does the first sentence. The second sentence permits the *continued* manufacture, use, or sale of additional products covered by the reissue patent when the defendant made, purchased, or used identical products, or made substantial preparations to make, use, or sell identical products, before the reissue date.
>
> *This equitable right is not absolute.* The second sentence states: "[t]he court ... *may* provide for the continued manufacture, use or sale ... *to the extent and under such terms as the court deems equitable* for the protection of investments made or business commenced...." Thus, under this language, the trial court may, as dictated by the equities, protect investments made before reissue.

1 F.3d at 1221 (citations omitted) (emphasis added). *See Ostermann,* 655 F.Supp. at 410 ("'equitable' intervening right defense ... provides for the *continued* manufacture, use or sale of the items in question, if the court deems such continued activity to be equitable") (emphasis in original).

**■** Under § 252:

> a court's discretion to fashion the terms of *future* dealings is extremely broad, including, for example, the power to limit use of infringing goods to specific items already in existence; to limit the amount, type, or geographical location of exercise of inter-

vening rights; or to permit the unconditional enjoyment of those rights.

*Mine Safety Appliances Co. v. Becton Dickinson & Co.,* 744 F.Supp. 578, 580–81 (S.D.N.Y.1990) (emphasis added). *See Seattle Box II,* 756 F.2d at 1579. In *Henkel, supra,* the court found that the "equitable" intervening rights doctrine is based on the balance between the following:

> (a) the public interest in the patent system and *the remedial purpose of the reissue statute;*[17] and (b) the private interest of an infringer who innocently and in good faith has undertaken substantial activities that because of reissue turn out to be infringement. Equitable intervening rights protect parties who in good faith innocently develop and manufacture an invention not claimed by an original patent.

754 F.Supp. at 1320. The court found further that the "equitable" intervening rights doctrine of § 252 "protects third persons who *rely* on the scope of a claim as originally granted, as against subsequent changes in scope by reissue." *Id.* (emphasis in original).

### *Analysis*

Although § 41(c)(2) does not involve reissue patents, and in fact, in the maintenance fee context the scope of the patent claims will always be the same, the language of the first sentence of § 41(c)(2) and the *BIC, Henkel* and *Ostermann* courts' interpretations of the corresponding provision in § 252 entitle defendants to "absolute" intervening rights in this case, *if* they constructed the "specific thing" patented (the oven) after the six-month grace period but before the late maintenance fee was accepted.[18] "Reliance" is

---

selling of such thing infringes a valid claim of the reissued patent which was in the original patent.'" *Id.* Because none of the claims in the reissued patent were in the original patent, the court found that the defendant "had a right to sell those sailboards which were in its inventory or on order on [the date of the reissued patent], and is immune from damages for those sales." *Id.* The court therefore granted the defendant's motion for summary judgment on that basis. *Id.* at 410–11.

**16.** In *Henkel,* the plaintiff conceded that there was no "identical" claim carried over from the original to the reissued patent and that no damages could be recovered for the defendant's activ-

ities prior to the date of reissue under the doctrine of "absolute" intervening rights. 754 F.Supp. at 1320.

**17.** At the conclusion of the oral argument on the present motions, plaintiffs' counsel asserted that § 252 is "remedial in nature" as is § 41(c), based on *Slimfold.* As stated by the *Henkel* court in the emphasized language above, the "remedial nature" of the statute, including equities and fairness upon which it is based, pertains to "equitable" intervening rights.

**18.** Plaintiffs contend that defendants constructed the oven or substantial parts of it prior to October 15, 1989. Defendants contend that the oven

not required in the "absolute" context, and plaintiffs' suggestion to the contrary based on *Slimfold* and *Quad* is misplaced.

## B. Timing of Defendants' "Infringing" Activities

■ Subsection 41(c)(2) provides in pertinent part that:

[n]o patent, the term of which has been maintained as a result of the acceptance of a payment of a maintenance fee under this subsection, shall abridge or affect the right of any person ... *who made ... after the six-month grace period but prior to the acceptance of a maintenance fee under this subsection* anything protected by the patent ... to sell to others to be used ... the specific thing so made....

35 U.S.C. § 41(c)(2) (emphasis added). In *Lang v. Pacific Marine & Supply Co., Ltd.,* 895 F.2d 761 (Fed.Cir.1990), the Court found that section 271's language, which provides that "whoever without authority makes, uses or sells any patented invention ... infringes the patent," "cannot be interpreted to cover acts other than an *actual making,* using or selling *of the patented invention.*" *Id.* at 765 (citing 35 U.S.C. § 271) (emphasis added).[19]

In support of plaintiffs' position that defendants' infringing activities occurred *before* October 15, 1989, plaintiffs submit a declaration from Jeffrey Johnson, Haden's vice-president of technology. (Pls.' Mem., Ex. 6). Based on Johnson's experience in "all phases of paint finishing technology including the design, construction, installation, and operation of radiant ovens for use in automotive paint finishing systems," *id.* ¶ 5, he avers that after a review of defendants' present motion and their responses to plaintiffs' first set of discovery requests, defendants' claim that all of the activities complained of occurred during October 15, 1989 through May 12, 1994 "is contrary to the documents produced by Defendants ... and [Johnson's] personal experience and knowledge." *Id.*

¶¶ 6–8. Based on Haden's performance of a Ford–Kansas City contract which was awarded to it at the same time defendants were awarded their contract, Johnson contends that "[o]ne would *expect* a similar construction schedule for Defendants' ovens." *Id.* ¶ 13 (emphasis added).

Defendants concede that they bid for and received the Ford–Kansas City oven contract and that they engaged in engineering work and other preliminaries directed to the manufacture of the oven in question *before* October 15, 1989. (Defs.' Br. in Opp'n at 10–11). They contend, however, that "there was no manufacture of the oven in question prior to October 15, 1989," *id.* at 11, and that the oven's actual construction did not start until January of 1990 with an operational date of December of 1990. *Id.,* Ex. C, Hugh Marshke Aff. ¶¶ 4, 6, 7.[20] Defendants further assert that since Haden worked *side-by-side* with defendants at Ford–Kansas City, plaintiffs are "fully aware" that the oven was not constructed before October 15, 1989 and was not operational until December of 1990.

## IV. Summary Judgment Standard of Review

■ Under Fed.R.Civ.P. 56(c), the party moving for summary judgment bears the initial burden of informing the court of the reason(s) for its motion and of identifying the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The substantive law identifies which facts are material, and once materiality of a fact is established, the court must determine whether a genuine issue regarding that fact exists in the record. *Anderson v. Liberty Lobby,*

was not constructed until January of 1990 although *preliminaries* for the project occurred prior to October 15, 1989.

19. 35 U.S.C. § 271 provides a statutory basis for a patent owner to bring an infringement action against an alleged infringer.

20. Hugh Marshke is one of the two shareholders of Myr; his brother, defendant Marshke, is the other.

*Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The district court is not to make credibility determinations or weigh the evidence upon a motion for summary judgment. *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir.1994) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513).

When determining whether there is a genuine issue for trial, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). "Although a plaintiff is entitled to a review of the evidence in the light most favorable to him or her, the nonmoving party is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356). "[I]n the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994), *petition for cert. filed*, 63 U.S.L.W. 3788 (U.S. Apr. 21, 1995) (No. 94–1734). *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Pierce*, 40 F.3d at 800.

In *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264 (Fed.Cir.1991), the Court found that "[s]ummary judgment is as available in patent cases as in other areas of litigation." *Id.* at 1265. The Court found further that:

> [t]he purpose of the summary process is to avoid a clearly unnecessary trial; it is not designed to substitute lawyers' advocacy for evidence, or affidavits for examination before the fact-finder, when there is a genuine issue for trial.

*Id. See also Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567 (Fed.Cir.1984), wherein the Court cited the following proposition with approval:

> [m]any, if not most, suits for patent infringement give rise to numerous and complex fact issues, rendering those suits inappropriate for summary disposition. *Where no issue of material fact is present, however, courts should not hesitate to avoid an unnecessary trial by proceeding under Fed.R.Civ.P. 56 without regard to the particular type of suit involved.*

*Id.* at 1571 (citing *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 778–79 (Fed.Cir.1983)) (emphasis added).

Applying this standard to the information presented to this Court, this Court is satisfied that no competent evidence has been presented by plaintiffs to dispute defendants' claim, supported by Hugh Marshke's affidavit,[21] that the oven at issue was "made" after October 15, 1989 and before May 12, 1994. Johnson's affidavit, submitted by plaintiffs, does not present any sufficient or competent evidence to refute defendants' statements with respect to the date of the oven's manufacture. The Court therefore concludes that no material issue of fact exists with respect to this issue, and the Court concludes, as a matter of law, that the oven at issue was made after October 15, 1989 and before May 12, 1994.

### V.  Conclusion

For reasons stated above, this Court finds that defendants' motion for partial summary judgment is granted. Defendants are entitled to "absolute" intervening rights under the first sentence of 35 U.S.C. § 41(c)(2), and plaintiffs' patent is therefore unenforceable with respect to the installation of the oven at Ford–Kansas City *after* October 15, 1989 and before May 12, 1994.

Plaintiffs' cross-motion for partial summary judgment is therefore denied.

---

**21.** In addition to Hugh Marshke's affidavit, one of *plaintiffs'* exhibits offered in opposition to defendants' present motion indicates that the oven was completed on December 1, 1989, approximately two months after '553 Patent became invalid as a result of the inadequate maintenance fee payment. *See* Pls.' Mem. in Resp., Ex. 4.