**Leo J. UTECHT, Plaintiff,**

v.

**Mary Lou OLSON and DT Labs/Bio–Protective Products, Inc., a Minnesota corporation, Defendants and Third Party Plaintiffs, and Protect Medical Products, Inc., Third Party Defendant.**

No. Civ. 99–711(PAM/JGL).

United States District Court,
D. Minnesota.

Feb. 16, 2000.

Norman P. Friederichs, Friederichs Law Office, Minneapolis, MN, for Leo J. Utecht, plaintiff.

Alan Marshall Anderson, Renee L. Jackson, Christopher K. Larus, Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, for defendants.

Norman P. Friederichs, Friederichs Law Office, Minneapolis, MN, for Leo J. Utecht, counter–defendant.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court upon a Motion for Summary Judgment by Plaintiff Leo J. Utecht and Third Party Defendant Protect Medical Products, Inc. The Motion seeks dismissal of Count 1 of the Counterclaim and Third Party Complaint of Defendants and Third Party Plaintiffs Mary Lou Olson and DT Labs/Bio–Protective Products, Inc. This count alleges patent infringement based on reissued U.S.Patent No. RE 35,814. For the reasons set forth below, the Motion is denied.

### BACKGROUND

Plaintiff Leo J. Utecht ("Utecht") obtained U.S.Patent Nos. 5,732,716 and 5,715,841, which are directed toward a pouch designed to treat injured persons while protecting the caregiver from biohazards and infection. Utecht granted a license to Protect Medical Products, Inc. ("Protect"), which manufactured and sold such products under that license. (*See* Utecht Decl. ¶ 2.) Defendant Mary Lou Olson obtained U.S.Patent Nos. 4,964,188, 5,301,806, and RE 35,814, which are directed toward a bag designed to be fitted over the user's hand while cleaning up pet feces. U.S.Patent RE 35,814 ("the '814 patent") reissued from U.S.Patent No. 5,301,806 ("the '806 patent"), pursuant to 35 U.S.C. Section 251.[1]

---

1. Section 251 of Title 35, United States Code, permits the reissue of patents that are "defective." One example of such a defect pertains to the patent's claims, which establish the metes and bounds of the intellectual property right. If the claims are incorrectly drawn, resulting in claim scope that is either too broad or too narrow, the patent may be sufficiently defective to warrant a reissue patent. *See* 35 U.S.C. § 251. In such a reissue proceeding, the defective patent is exchanged for a reissue patent. The reissue patent is as-

On May 7, 1999, Utecht initiated this lawsuit against Defendants (and Third Party Plaintiffs) Mary Lou Olson ("Olson") and DT Labs/Bio–Protective Products, Inc. ("DT Labs"). Underlying this lawsuit are certain statements that the Defendants allegedly made to other parties indicating that the Defendants owned patent rights to the products made by Utecht's licensee, Protect. (*See* Compl. ¶ 28.) Utecht's Complaint seeks a declaratory judgment that Plaintiff does not infringe U.S.Patent Nos. 4,964,188, 5,301,806, and RE 35,814. The Complaint also sets forth other counts alleging false advertising, false designation of origin, interference with prospective business advantage, defamation, product disparagement, and patent misuse.

On June 23, 1999, Defendants filed an Answer, Counterclaim, and Third–Party Complaint, which joined Protect as a Third–Party Defendant. Count 1 of the Counterclaim, which is the subject of the present motion, alleges infringement of the '814 reissue patent. The Defendants' other counts allege Lanham Act violations and state law claims of deceptive trade practices and false advertising.

Presently before the Court is Utecht's and Protect's Summary Judgment Motion seeking to dismiss the counterclaim for infringement of the '814 reissue patent. Utecht and Protect allege that the '814 reissue patent is "ineffective" per se because it reissued from the '806 original patent, which had lapsed for nonpayment of maintenance fees.[2] (*See* Pl.'s Mem. in Supp. at 11.) In support of this argument, Utecht and Protect note that when the Defendants filed their counterclaim for infringement of the '814 reissue patent on

June 23, 1999, the underlying '806 original patent had already expired for nonpayment of maintenance fees on April 12, 1998. (*See* Freiderichs Decl.Ex. H.) On July 12, 1999, Defendants filed a petition and fee to reinstate the surrendered '806 original patent and the '814 reissue patent. (*See id.*) The U.S.Patent & Trademark Office ("USPTO") granted the petition and reinstated the surrendered '806 original patent and the '814 reissue patent on October 15, 1999.[3] (*See id.*)

## DISCUSSION

### A. Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quotation omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter-*

---

signed a patent number that is different from that of the original patent.

2. In order to maintain an issued patent in force, the patent holder must pay "maintenance fees" at certain times during the patent term. *See* 35 U.S.C. § 41(b).

3. Reinstatement of a lapsed patent under 35 U.S.C. Section 41(c)(1) is a distinct and different concept from reissue of a defective patent under 35 U.S.C. Section 251. The patent

number of a reinstated patent is the typically the same as that of the lapsed patent. In this case, however, since the '806 original patent had already reissued as the '814 reissue patent during the lapse period of the '806 original patent, the reinstated patent bears the '814 reissue patent number. (*See* Freiderichs Decl.Ex. H.) Stated differently, the '806 patent was only reinstated to effect its surrender in favor of the '814 reissue patent. (*See id.*)

*prise Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik,* 47 F.3d at 957. Since all the facts regarding the lapse of the '806 original patent are known and undisputed, it is appropriate for the Court to decide the issue of whether the '814 reissue patent is "ineffective" per se for nonpayment of the maintenance fees for the '806 original patent.

## B. Effect on Reissue Patent of Nonpayment of Maintenance Fees for Original Patent

■ The parties have not cited any precedent from the Federal Circuit Court of Appeals that directly addresses the effect on a reissue patent of nonpayment of maintenance fees for the original issued patent on which the reissue patent is based. However, such authority does exist on the separate subjects of: (1) nonpayment of maintenance fees; and (2) reissue patents. These subjects are both complicated somewhat by the fact that a patent that is "unintentionally" allowed to lapse for nonpayment of maintenance fees can, in certain circumstances, be reinstated upon a petition and fee from the patent holder. *See* 35 U.S.C. § 41(c)(1). This is precisely what happened in the present case. (*See* Freiderichs Decl.Ex. H.)

The '806 original patent was in force when Defendants applied, on April 12, 1996, to surrender the '806 original patent for its reissue, with different claim scope, as the '814 reissue patent. (*See* Freiderichs Decl.Ex. H.) However, on April 12, 1998, the '806 original patent lapsed for nonpayment of maintenance fees and was not reinstated until October 15, 1999. (*See id.*) Therefore, the '806 original patent

was not in force when the '814 reissue patent reissued on June 2, 1998. (*See id.*) The '806 original patent was also not in force when the Defendants filed their counterclaim for infringement of the '814 reissue patent on June 23, 1999. (*See id.*) Utecht and Protect base their argument on statutory language that permits the reissue of defective patents "for the unexpired part of the term of the original patent." 35 U.S.C. § 251. They argue that no authority exists for reissuing a patent based on an expired original patent.

The most directly relevant guidance comes not from a court of law, but from the Manual of Patent Examining Procedure ("MPEP") published by the USPTO. It states that "if maintenance fees have not been paid on the original patent ... and the patent has expired, no reissue patent can be granted ... Once a patent has expired, the Commissioner no longer has the authority under 35 U.S.C. § 251 to reissue the patent." MPEP § 1451.01 (7th ed.1998) (citing *In re Morgan,* 990 F.2d 1230 (Fed.Cir.1992)). An examination of *Morgan,* however, indicates that the USPTO's proposition is based on an overly broad reading of that decision.

The *Morgan* decision dealt with a patent that expired because its term (which, at that time, was 17 years from the date of issuance) had completely elapsed due to the passage of time. *See Morgan,* 990 F.2d at 1230. By contrast, in the instant case, the '806 original patent lapsed for nonpayment of maintenance fees, but was then reinstated by the USPTO as the '814 reissue patent for the unexpired remainder of the '806 original patent's term, pursuant to statutory authority under 35 U.S.C. Section 41(c). Section 251, allowing reissue of a patent, must be read in pari materia with Section 41(c), allowing reinstatement of a lapsed patent for the remaining unexpired portion of its patent term. Section 41(c)(1) expressly provides that "[i]f the Commissioner accepts payment of a maintenance fee after the six-month grace period, the patent shall be considered as not having

expired at the end of the grace period." *See also* 37 C.F.R. § 1.378. "Thus, a patent is retroactively rendered enforceable during the lapse time period when the Commissioner accepts late payment." *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1554 (Fed.Cir.1997). Although the *Fonar* case did not directly address the reissue of a patent based on a lapsed patent that was later reinstated, it supports the conclusion that the above-cited plain language of Section 41(c)(1) demands that such a reissued patent not be rendered ineffective per se. Accordingly, Utecht's and Protect's Motion for Summary Judgment must be denied as a matter of law.

## C. Intervening Rights

The motion before the Court also implicitly raises the issue of whether Utecht and Protect are entitled to intervening rights. The doctrine of intervening rights provides an affirmative defense that, under certain circumstances, exempts accused infringers from liability for activity that might otherwise be considered patent infringement. *See Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed.Cir.1986). Such intervening rights protect accused infringers against liability resulting from certain acts taken by the patentee after the patent issues. Under Section 41(c)(2), the lapse (and later reinstatement) of a patent for nonpayment of maintenance fees may give rise to intervening rights to protect accused infringers who may have relied on the lapse in carrying out their affairs. *See* 35 U.S.C. § 41(c)(2); *Fonar*, 107 F.3d at 1554 (requiring reliance in order to obtain intervening rights under Section 41(c)(2)). Under Section 252, a patent that reissues with different claim scope than the original patent may give rise to intervening rights. *See* 35 U.S.C. § 252. Section 252 provides "two separate and distinct defenses under the doctrine of intervening rights: 'absolute' intervening rights and 'equitable' intervening rights." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed.Cir.1993). Even without showing any actual reliance on the differences in claim scope, the accused infringer

is provided with the "absolute right to use or sell a product that was made, used, or purchased before the grant of the reissue patent as long as this activity does not infringe a claim of the reissue patent that was in the original patent." *See id.* at 1220–21. Moreover, equitable intervening rights permit the accused infringer to continue, after the grant of the reissue patent, to manufacture, use, or sell additional products that infringe the reissue patent, but only to the extent needed to protect investments made before reissue. *See id.* at 1221.

In the present case, Utecht and Protect reference both Section 41(c)(2) and Section 252 in support of their argument—which the Court has already rejected—that the '814 reissue patent was ineffective per se. (*See* Pl.'s Mem. in Supp. at 1.) The Court acknowledges, however, that Utecht and Protect may be entitled to an intervening rights affirmative defense under Section 41(c)(2) or Section 252. Based on *Haden Schweitzer Corp. v. Arthur B. Myr Indus., Inc.*, 901 F.Supp. 1235, 1242–43 (E.D.Mich.1995), Utecht and Protect argue that intervening rights under Section 41(c)(2) are absolute; that they do not require that the accused infringer actually relied on the lapse of the patent for nonpayment of maintenance fees. The subsequent decision of the Federal Circuit in *Fonar*, however, calls the *Haden Schweitzer* decision into doubt.

In *Fonar*, the Federal Circuit interpreted Section 41(c)(2) as "intended to protect the rights of those who, in reliance on the lapse, first began using the claimed invention or who first took steps to begin using it during the lapse period." *Fonar*, 107 F.3d at 1554. It noted that Section 41(c)(2) "does not immunize discreet products made, used, or sold as part of a continuing commercial effort begun before the lapse." *Id.* Accordingly, the *Fonar* court found that the accused infringer was not entitled to the protection of Section 41(c)(2) during the lapse period where the USPTO subsequently accepted a late pay-

ment to reinstate the patent. *See id.* Based on the *Fonar* decision, the Court concludes that intervening rights under Section 41(c)(2) are not absolute, but depend instead on which of the allegedly infringing activity was undertaken in reliance on the lapse period. Utecht and Protect admit to making and selling their product beginning in 1992. (*See* Pl.'s Mem. in Supp. at 1.) This occurred well before the lapse period of the '806 original patent and its '814 reissue patent, between April 12, 1998 and October 15, 1999. Consequently, Utecht and Protect fail to meet the reliance requirement for their affirmative defense of intervening rights under Section 41(c)(2).

The Court reserves the remaining question, i.e., whether Utecht and Protect are entitled to intervening rights for reissue patents under Section 252, for additional discovery pursuant to Rule 56(f). *See* Fed. R.Civ.Proc. 56(f); *Dunkin' Donuts of Am. v. Metallurgical Exoproducts Corp.,* 840 F.2d 917, 919 (Fed.Cir.1988) (remanding for further discovery). Both absolute and equitable intervening rights under Section 252 require a difference in claim scope between the original and reissue patents. *See* 35 U.S.C. § 252. This would require the Court to construe the claims of both the '806 and '814 patents in ascertaining their scope, to read the claims on the accused products, to establish the relevant dates associated with the allegedly infringing activity for determining absolute intervening rights under Section 252, and to determine whether equitable relief is necessary to protect any investment by Utecht and Protect. However, the facts needed to make such determinations are presently unavailable. Defendants have filed an appropriate affidavit, as required under Rule 56(f), establishing the reasons why such facts are still unavailable at this time.[4] (*See* Anderson Aff. Pursuant to Rule 56(f).) Based on the Defendants' Rule 56(f) affidavit, the Court finds that any determination of intervening rights

under Section 252 is premature. Thus, to the extent that the present Motion attempts to assert an affirmative defense of intervening rights under Section 252, the Court's denial is without prejudice.

## CONCLUSION

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY OR-DERED** that:

A. The Motion for Summary Judgment (Clerk Doc. Nos. 30–31) by Plaintiff Leo J. Utecht and Third Party Defendant Protect Medical Products, Inc., is **DENIED;** and

B. The Court reserves any question of intervening rights under 35 U.S.C. Section 252 pending further discovery pursuant to Rule 56(f).

---

4. Discovery in this case commenced only recently, on August 18, 1999, with the parties' Rule 26(f) meeting, and is scheduled to continue through May 1, 2000. (*See* Pretrial Schedule.)